#23889-a-PER CURIAM

**2006 SD 105**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,            Plaintiff and Appellee,

  v.

CHARLES DIVAN,            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
SHANNON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JANINE M. KERN
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota            Attorneys for plaintiff
                      and appellee.

GREGORY J. SPERLICH of
DeMersseman, Jensen, Christianson,
  Stanton & Huffman, LLP
Rapid City, South Dakota         Attorneys for defendant
                      and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2006

OPINION FILED **11/21/06**

#23889

PER CURIAM

[¶1.] Charles Divan appeals an order revoking his suspended imposition of sentence contending the probation conditions were impossible to comply with and the trial court abused its discretion in concluding they were violated. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶2.] On January 26, 2001, an information was filed charging Divan with twenty-seven counts of possessing stolen property. All the stolen property in this case consisted of cattle owned by Divan's neighbors that were discovered on his property. Divan entered into a plea agreement in which he agreed to plead nolo contendere to one count of possession of stolen property in exchange for the State dismissing all other charges. The court granted Divan a suspended imposition of sentence and placed him on probation for a period of ten years with several terms and conditions. The condition at issue here stated:

> If the Defendant shall come in possession or discover any stray or unbranded cattle, he shall immediately notify the Shannon County Sheriff's Office.

[¶3.] On December 22, 2004, the State filed a petition seeking revocation of Divan's suspended sentence alleging that Divan failed to notify the Shannon County Sheriff of unbranded cattle on property he owned, leased, or controlled within Shannon County. At the hearing on this petition, evidence was presented that two cows branded and identified as belonging to Vern Fortune and an unbranded calf were discovered in Range Unit 38. Although this unit is owned by the Oglala Sioux Tribe and leased to Tom Ward (Ward), the court found that Divan had control over that unit based on his relationship with Ward. The court

-1-

considered that a substantial number of cattle found in Range Unit 38 were double branded with both Ward's and Divan's brands. Although Ward testified that Divan did not "run" any cattle in Range Unit 38, and the cattle that were double branded were those Ward bought from Divan in 1990, testimony was also presented that the double branded cattle were not that old and could not exclusively be those purchased from Divan. Ward further testified that the Divan family was helping him out by watching Range Unit 38 during the fall of 2004. However, Divan testified that he does not own, lease or control any portion of Range Unit 38.

[¶4.]     FBI Agent Charlie Cresalia (Cresalia) testified that Divan's father made a statement to him that Divan had an agreement with Ward. According to this agreement, Divan would use Ward's leased land to run Divan cattle and also take care of Ward's cattle. Divan did not object to this hearsay testimony. Cresalia also testified that Divan made a voluntary statement after his arrest that he had an agreement with Ward and is responsible for Ward's lease. Sheriff Jim Daggett (Daggett) also testified that Divan's father mentioned that Divan was running cattle together with Ward on the Ward lease. Divan made a motion to exclude this testimony as hearsay, but the court allowed the testimony pursuant to SDCL 19-9-14(4) (Rule 1101(b)(3)). After weighing the testimony and credibility of all the witnesses, the court concluded that Divan was in violation of the terms and conditions of his probation and sentenced Divan to eight years in the State Penitentiary with four of those years suspended.

[¶5.]     Divan appeals, raising two issues:

> 1. Whether the trial court abused its discretion when it found Divan in violation of the conditions of his probation.

2. Whether it was impossible for Divan to comply with the terms and conditions of his probation.

## ANALYSIS AND DECISION

[¶6.]    **1.    Whether the trial court abused its discretion when it found Divan in violation of the conditions of his probation.**

[¶7.]    A probation revocation proceeding is not a criminal prosecution. State v. Short Horn, 427 NW2d 361, 362 (SD 1988) (citations omitted). Thus, this Court has held:

> 'Proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.'

State v. Beck, 2000 SD 141, ¶7, 619 NW2d 247, 249 (quoting State v. Christian, 1999 SD 4, ¶12, 588 NW2d 881, 883 (citations omitted)). However, "for this Court to sustain an order which revokes probation, a factual showing must exist which justifies the exercise of the trial court's discretion." *Short Horn*, 427 NW2d at 362 (citations omitted). As long as there is adequate evidence to support this minimal level of scrutiny, the trial court's decision will be upheld. Matter of Brown, 1997 SD 133, ¶8, 572 NW2d 435, 437.

[¶8.]    Divan argues that even under this relaxed burden of proof there is insufficient evidence to sustain the probation revocation. He contends the trial court's consideration of hearsay testimony was an abuse of discretion and a violation of the Confrontation Clause. Absent this hearsay evidence, Divan asserts

there is insufficient evidence that he violated his probation. The State responds that Divan's hearsay objection was insufficient to preserve the confrontation issue on appeal. The State also claims Divan has not shown any prejudicial error stemming from the introduction of the disputed testimony, because substantially identical testimony was admitted without objection.

[¶9.] "Generally, parties must object to specific court action and state the reason underlying their objection so that the circuit court has an opportunity to correct any error." State v. McCrary, 2004 SD 18, ¶15, 676 NW2d 116, 121 (citations omitted). Further, a hearsay objection at trial is not sufficient to preserve a confrontation clause objection on appeal. Young v. Lockhart, 892 F2d 1348, 1354 (8th Cir 1989) (citation omitted), *see also* State v. Howard, 509 NW2d 764, 769 (Iowa 1993) (stating a hearsay objection is not specific enough to raise the issue of the constitutional right to confrontation) (citing State v. Farni, 325 NW2d 107, 109 (Iowa 1982)). In this case, Divan objected to Daggett's testimony as "beyond the direct and it's now hearsay on an unrelated area." This objection was not sufficiently specific to inform the trial court of the confrontation claim now argued. Therefore, this issue was not properly preserved for appeal.

[¶10.] Moreover, "no prejudice issues from admission of evidence where substantially the same evidence is elsewhere in the record without objection." State v. Hood, 346 NW2d 481, 484 (Iowa 1984) (citation omitted). "Where inadmissible evidence admitted at trial is cumulative only and other admissible evidence supports the result, the cumulative evidence, though inadmissible, is non-prejudicial." State v. Tribitt, 327 NW2d 132, 135 (SD 1982) (citations omitted).

Even if we assume Daggett's testimony included inadmissible hearsay, this same testimony was offered by Cresalia without objection. Thus, there is no prejudicial error resulting from its admission.

[¶11.]        In admitting this hearsay testimony, the trial court relied upon SDCL 19-9-14(4) (Rule 1101(b)(3)), which provides:

> Except as otherwise provided in this section, chapters 19-9 to 19-18, inclusive, apply to all actions and proceedings in the courts of this state. Those chapters other than those with respect to privileges do not apply in the following situations:
> . . .
> (4) Sentencing, or granting or revoking probation.

However, the federal courts have held that even when the federal rules of evidence do not apply, a defendant does not lose all confrontation rights. U.S. v. Reynolds, 49 F3d 423, 426 (8th Cir 1995). Although "*Crawford v. Washington*, 541 US 36, 124 SCt 1354, 158 LEd2d 177 (2004), involving the contours of the confrontation right in criminal prosecutions, does not apply" to probation revocation proceedings, U.S. v. Martin, 382 F3d 840, 844, n4 (8th Cir 2004), there is still a limited due process right to confront and cross-examine adverse witnesses in a revocation hearing. *Martin*, 382 F3d at 844. Most federal courts have agreed with this conclusion that *Crawford* is inapplicable in parole revocation hearings. State v. Abd-Rahmaan, 111 P3d 1157, 1161 (Wash 2005); *see e.g.*, U.S. v. Hall, 419 F3d 980, 985-86 (9th Cir 2005); U.S. v. Kirby, 418 F3d 621, 627 (6th Cir 2005); U.S. v. Aspinall, 389 F3d 332, 342-43 (2d Cir 2004); U.S. v. Rondeau, 430 F3d 44, 48 (1st Cir 2005); Ash v. Reilly, 431 F3d 826, 829 (DC Cir 2005).

[¶12.]        In *United States v. Bell*, 785 F2d 640 (8th Cir 1986), the Eighth Circuit Court of Appeals "devised a balancing test to determine whether evidence has been

admitted at a probation revocation hearing in violation of the applicable limited right to confront and cross-examine adverse witnesses." *Martin*, 382 F3d at 844. According to this test, "the trial court must balance the defendant's constitutional right to confront a witness against any governmental explanation for 'why confrontation is undesirable or impractical.'" *Reynolds*, 49 F3d at 426 (quoting *Bell*, 785 F2d at 643 (additional citation omitted)). "It must also consider the reliability of the evidence offered in place of live testimony." *Id*. (citing *Bell*, 785 F2d at 643). Additionally, "where the government demonstrates that the burden of producing live testimony would be inordinate *and* offers in its place hearsay evidence that is demonstrably reliable it has made a strong showing of good cause." *Id*. (emphasis added). However, the mere finding that the hearsay statements are inherently reliable does not alone suffice to establish the admissibility of hearsay statements. *Martin*, 382 F3d at 846 (citing U.S. v. Zentgraf, 20 F3d 906, 910-11 (8th Cir 1994) (hearsay evidence was improperly admitted where the government failed to show good cause for not producing the live witness, even though there was an adequate basis for finding the out-of-court statement reliable)).

[¶13.]     In this case, Divan's father was not called to testify by either party. However, both Daggett and Cresalia testified to Divan's father's out-of-court statements. There was no evidence set forth by the State showing that it was undesirable or impractical to produce Divan's father for live testimony. On the other hand, the hearsay evidence offered in its place is demonstrably reliable. Daggett and Cresalia independently testified to the same language used by Divan's father describing the agreement with Ward. Additionally, these statements appear

to be against Divan's father's interest because it imputes control over Ward's property to himself and his son. But ultimately, as this evidence was cumulative in nature to other properly admitted evidence, we need not perform a balancing test as under such circumstances its admission cannot constitute prejudicial error.

[¶14.] Divan does not dispute the fact that stray and unbranded cattle were located in Range Unit 38. Thus, the only issue before the trial court was whether Divan owned, leased or controlled this territory. The evidence established that this unit was tribally owned and leased to Ward. However, there was conflicting evidence concerning whether Divan had cattle on the unit, thereby exercising control over the territory. Although some of the testimony relied upon was hearsay evidence, there was also testimony from Ward regarding an arrangement with Divan and a voluntary statement from Divan confirming an arrangement with Ward. "We give the trial court's opportunity to judge the credibility of the witnesses and to weigh their testimony due regard when reviewing the trial court's findings of fact." Midzak v. Midzak, 2005 SD 58, ¶14, 697 NW2d 733, 738 (citations omitted). Here, the trial court's decision was based on credibility determinations and the reliability of the evidence offered. On this record, there is adequate evidence to uphold the trial court's conclusion that Divan violated his probation condition.

[¶15.] **2. Whether it was impossible for Divan to comply with the terms and conditions of his probation.**

[¶16.] Divan claims the conditions of his probation were impossible to comply with because it is so common for cattle to get out of a particular pasture. He argues that it would be impossible for him to have knowledge of stray cattle on his land.

Pursuant to SDCL 23A-27-18,* trial courts are empowered with a wide latitude of discretion in imposing conditions of probation. State v. Pettis, 333 NW2d 717, 719 (SD 1983). "This Court's review of conditions of probation is an inquiry to see if those conditions are legal and reasonable." *Id.* (citing White Eagle v. State, 280 NW2d 659, 660 (SD 1979)). This Court has stated,

> The granting of suspended imposition of sentence . . . is strictly a matter of grace and rests solely within the discretion of the court. It is not a matter of right or entitlement and the exercise of that discretion includes the imposition of conditions. Further, the only limitation on what conditions may be imposed are that they be legal and reasonable.

*White Eagle*, 280 NW2d at 660 (citations omitted).

[¶17.]　　　Further, "terms and conditions of probation are not part of the court's mandatory sentence and if the appellant deems them too severe he need not accept the probation and may demand immediate sentencing." State v. Jackson, 272 NW2d 102, 104 (SD 1978) (citation omitted). "Appellant may not be heard to complain of probation conditions voluntarily accepted." *Id.* (citations omitted). Also, "essential to the process of establishing probation conditions is an exceptional degree of flexibility." *Pettis*, 333 NW2d at 719 (citation omitted). "'It is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion.'" *Id.* (quoting State v. Elder, 77 SD 540,

---

\* SDCL 23A-27-18 provides: "Upon conviction, the court having jurisdiction to try the offense may suspend the execution of any sentence imposed during good behavior, subject to such conditions or restitutions as the court may impose. The suspension order or judgment can be made only by the court in which the conviction occurred."

544, 95 NW2d 592, 594 (1959) (internal citation omitted)). Therefore, "'conditions of probation may be tailored to suit the needs, practicalities and realities of each case to better serve the defendant and the public.'" *Id.* (quoting *White Eagle*, 280 NW2d at 661).

[¶18.] In structuring this sentence for Divan, the trial court instructed, "You need to do a better job of sorting out what belongs where." It is clear that the court imposed this condition to ensure Divan would check his cattle and discover strays on his property. This condition serves the needs of the public by protecting them from having their cattle lost or stolen. Divan voluntarily accepted this condition and readily complied with it at the beginning of his probation. As Daggett testified, in the beginning there were many instances where Divan would report stray cattle on his property. However, as time went on Divan had less and less contact with the Sheriff's office. The condition was imposed to ensure Divan actively managed the cattle operation and his property to avoid claims of lost or stolen cattle. On these facts, it was not unreasonable for the court to impose responsibility on Divan to check his cattle and look for strays, nor does it appear impossible for Divan to comply with that request.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.