#24721-aff in pt, rev in pt & rem-GAS

**2009 SD 67**

# IN THE SUPREME COURT

## OF THE

## STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                      Plaintiff and Appellee,

v.

ANTHONY CLIFFORD JOHNSON,                      Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

JASON R. ADAMS of
Tschetter & Adams Law Office, PC
Sioux Falls, South Dakota                      Attorneys for defendant
                                          and appellant.

\* \* \* \*

ARGUED APRIL 29, 2009

OPINION FILED **07/29/09**

#24721

SEVERSON, Justice.

[¶1.]	The circuit court admitted into evidence certain statements to which Anthony Johnson objected. Johnson was subsequently found guilty of distribution of one ounce or less of marijuana and possession of two ounces or less of marijuana. He appeals. We affirm in part, reverse in part, and remand for retrial.

## FACTS

[¶2.]	On April 3, 2007, Otto Lewis was at the Huron Police Department (Police Department) on a shoplifting charge.[1] Detective Jamie Gogolin previously used Lewis as an informant to aid in controlled drug purchases. When Lewis initially agreed to be an informant, he agreed to make four controlled buys for the Police Department. As of April 3, 2007, Lewis had only completed three of the buys. Detective Gogolin reminded Lewis of their agreement. Lewis offered to purchase drugs from Anthony Johnson at 360 Frank Avenue Southeast in Huron, South Dakota.[2]

[¶3.]	Detective Gogolin and Lewis decided to complete the controlled buy on the same date. Detective Gogolin asked Lewis to call Johnson to see if he had any marijuana for sale. Because Lewis did not know whether Johnson had a phone or what his phone number was, Lewis offered to drive to Johnson's house to ask him.

---

1.	Lewis was never prosecuted for this charge.

2.	Detective Gogolin testified he never directed any of his informants from whom to buy drugs "[b]ecause [he] want[s] [the informants] to feel comfortable in the situation they are in when they have a wire on them. And by going back to the same person they have bought drugs from in the past, they are comfortable with that. And they know the terminology that people use, because different people talk about drugs in different ways."

Followed by Detective Gogolin, Lewis drove to the residence, went inside, and after a few minutes came out and returned to the Police Department. At the Police Department, Lewis stated that Johnson had marijuana to sell. Subsequently, Lewis's person and vehicle were searched for drugs and money, a wire transmitter was placed on him, and he was given $50[3] to purchase the marijuana.

[¶4.] Lewis returned to the address in question. Detective Gogolin, along with Chief Deputy Douglas Solem of the Beadle County Sheriff's Office, also returned and parked the patrol car around the corner, out of sight from the residence.[4] Neither Detective Gogolin nor Chief Deputy Solem could see inside the house. Detective Gogolin testified that while at the residence, no one other than Lewis entered or exited the house, nor did any vehicles stop at the residence. From the patrol car, Detective Gogolin and Chief Deputy Solem listened to and recorded the conversation transpiring in the residence. Three voices were identified on the recording, and Detective Gogolin testified they belonged to Lewis, Johnson, and Johnson's wife, Vanessa.[5] However, Detective Gogolin was uncertain as to whether anyone else was present in the house while Lewis was there.

---

3.  Detective Gogolin made a photocopy of the $50 bill, and testified this was customary practice for controlled buys because it enabled him to later identify the bill by its serial number.

4.  As backup, Detective Gene Miller of the Huron Police Department was within the vicinity of the residence, but out of the view of the resident occupants. His car was similarly equipped with a monitor, allowing him to hear the conversation within the house. He was unable to see into the residence.

5.  Based on his prior contact with Johnson and Vanessa, Chief Deputy Solem testified that he could also identify their voices on the audio recording, but

(continued . . .)

[¶5.] The audio recording reveals no specific mention of drugs, marijuana or money during the conversation. There was no negotiation as to price or amount of marijuana. However, there was a question, by a male voice (later identified as Johnson's), about who "it" was for and a reference by the same voice about "it" being "juiced up a little." Detective Gogolin testified that, based on his experience and training, this was a reference to drugs. He further testified that participants in a drug transaction rarely discuss the events transpiring. Detective Gogolin explained, "If [a confidential informant] went into the place and walked up and introduced [himself] and said hi to the person [he was] buying from and [said] that [he was] there to get a controlled drug, the [seller] would be very suspicious that the [buyer] had a wire on and wouldn't sell to [him]."

[¶6.] After leaving the residence, Lewis returned to the Police Department and turned over a plastic bag containing 0.12 ounces of marijuana. He was debriefed by Detective Gogolin as to the specifics of what transpired within the residence. Lewis and his vehicle were searched a second time. No other drugs were discovered and the $50 was not found. Detective Gogolin testified he made no attempt to recover the $50 from Johnson or his residence. He explained this was normal because it allowed for the informants' identities to remain confidential so they could be used in the future.

_____

(. . . continued)
   admitted he was not a voice identification expert, nor received any training in voice identification.

[¶7.]     On June 22, 2007, Johnson was charged with distribution of one ounce or less of marijuana in violation of SDCL 22-42-7, and possession of two ounces or less of marijuana in violation of SDCL 22-42-6. Prior to the motions hearing and jury trial, Lewis died from circumstances unrelated to this case. He was never subjected to cross-examination.

[¶8.]     Johnson filed two motions in limine, a motion to suppress the evidence, and a motion to dismiss the case. These motions related to Lewis's conversations with Detective Gogolin after the alleged controlled buy and the audio recording of the conversation that transpired between Lewis, Johnson, and Vanessa. Johnson's motion to suppress the evidence and motion in limine were denied, but the motion to dismiss was taken under advisement. In its memorandum opinion, the circuit court suppressed the conversation between Lewis and Detective Gogolin after the alleged buy, but allowed the jury to hear the recorded conversation between Lewis, Johnson, and Vanessa.

[¶9.]     The trial commenced on September 13, 2007. Immediately before voir dire, the court ruled that Detective Gogolin could testify that Lewis told him that he could purchase drugs from Johnson. During trial, Johnson stipulated that he and his family lived at the address in question, and that Lewis had returned from that address with a bag of marijuana, weighing 0.12 ounces. At the close of the State's case, the court denied Johnson's motion for a judgment of acquittal. The jury returned guilty verdicts. Johnson pleaded guilty to being a habitual offender and was sentenced to four years in prison for the distribution charge, and to time served for the possession charge. Johnson appeals, raising two issues:

1. Whether Johnson's Sixth Amendment right to confront witnesses was violated when statements were admitted into evidence even though the declarant was unavailable and Johnson had no opportunity to cross-examine him.

2. Whether there was sufficient evidence presented to prove beyond a reasonable doubt the elements of distribution of one ounce or less of marijuana and possession of marijuana.

## STANDARD OF REVIEW

[¶10.] We review an assertion of a violation of a constitutional right under the de novo standard of review. State v. Selalla, 2008 SD 3, ¶18, 744 NW2d 802, 807 (citation omitted). We review the sufficiency of the evidence under the following standard:

> "In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." In making that determination, "we accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." Moreover, "the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence." Therefore, this Court does not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence. State v. LaPlante, 2002 SD 95, ¶19, 650 NW2d 305, 310 (internal citations omitted). Thus, "[a] guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." State v. Jones, 521 NW2d 662, 673 (SD 1994) (citation omitted).

State v. Mulligan, 2007 SD 67, ¶7, 736 NW2d 808, 812-13 (quoting State v. Pasek, 2004 SD 132, ¶7, 691 NW2d 301, 305).

[¶11.] **1. Whether Johnson's Sixth Amendment right to confront witnesses was violated when statements were admitted into evidence even though the declarant was unavailable and Johnson had no opportunity to cross-examine him.**

[¶12.]     Prior to trial, Johnson filed several motions concerning the audio recording of the conversation at Johnson's residence during the alleged controlled buy and the conversation between Detective Gogolin and Lewis at the Police Department following the alleged buy.  In its written opinion, the circuit court suppressed the latter portion of the audio recording involving the conversation between Detective Gogolin and Lewis, but allowed the remainder of the recording involving the conversation that transpired within Johnson's residence.  Following voir dire but prior to opening statements, Johnson made an oral motion in limine seeking to preclude Detective Gogolin from testifying as to anything Lewis told Detective Gogolin.  In response, the court limited Detective Gogolin's testimony as follows:

> [Detective] Gogolin can testify that [Lewis] was an informant. That [Lewis] came to him and said I can make a buy from Mr. Johnson.  That is it.  He can testify that he followed him over to the house and all of that, but he can't testify about anything else that was said to him. . . .  The only statement he can make is the informant volunteered that he could make a buy from the defendant.

Accordingly, Detective Gogolin testified that Lewis told him he was going to buy drugs from Johnson, and the audio recording was played to the jury, revealing the conversation that transpired within Johnson's residence.  Johnson alleges that admitting these statements violated his constitutional right to confrontation pursuant to the Sixth Amendment and *Crawford v. Washington*, 541 US 36, 124 SCt 1354, 158 LEd2d 177 (2004).  The State asserts Johnson waived this issue because his motions were predicated upon hearsay and inadmissible evidence grounds, rather than Confrontation Clause grounds.  Alternatively, should this

Court address the issue, the State maintains that the statements were appropriately admitted.

[¶13.] We first consider the State's argument that Johnson waived this issue. Johnson contends that his argument to the circuit court asserting his inability to cross-examine Lewis was sufficient to preserve the Confrontation Clause issue for appeal. Moreover, he argues that pursuant to SDCL 19-9-3, he was not required to object during trial or make an offer of proof to preserve the issue for appeal because the circuit court previously made a definitive ruling regarding admissibility of the statements.

[¶14.] With respect to the audio recording, the written motions filed prior to trial sought to exclude the audio recording, or portions thereof, on several grounds, including hearsay, prejudice, irrelevance, and the right to confront and cross-examine witnesses. Admittedly, Johnson did not allege each of these grounds in each motion. Nonetheless, he asserted the general right to confrontation with respect to all of the motions during the August 28, 2007 motions hearing. In its memorandum opinion, the court, discussing Johnson's right to cross-examine his witnesses, suppressed a portion of the audio recording deeming it to violate *Crawford*, but ultimately allowed the remainder of the recording. SDCL 19-9-3 (Rule 103(a)) provides in part: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve the claim of error for appeal." Although, no federal or state case law defining "definitive" was discovered, the dictionary definition provides in part, "[d]etermining finally; decisive . . .

[a]uthoritative and complete." Am. Heritage Dictionary 375 (2ded 1991). The court's ruling to admit certain evidence and exclude other evidence was a final and authoritative determination regarding admission of this evidence; it was definitive. Therefore, the ruling preserved for appeal Johnson's Confrontation Clause claim regarding the audio recording.

[¶15.] Regarding Lewis's statement to Detective Gogolin, Johnson did not move to preclude this statement until immediately prior to voir dire. The following exchange took place:

> **Defense counsel:** [I]n the pretrial motions hearing, Officer Gogolin talked a lot about the [confidential informant (CI)] telling him that he would be able to make a buy from the defendant, etc., I would – based on the Court's opinion, it's my understanding that anything that the confidential informant told Officer – or Officer Gogolin is excluded.
> And so I'm making a motion in limine that Detective Gogolin not be allowed to testify as to things the CI told him before the buy. At the pretrial motions hearing, we talked about he went to the house, and he would be able to make this buy with the defendant. And I'm asking that that be excluded.
>
> **State's Attorney:** Well, Your Honor, obviously, we would like to offer that testimony. And I would base my objection to the motion on the fact that I don't believe it fits within what it's being offered for, to prove the truth of the matter asserted. I – it's more – goes to both the informant and the detective's state of mind. And that is an exception to hearsay.
>
> **Defense counsel:** Your Honor, it's clearly hearsay; that the defense is not going to be able to cross-examine the confidential informant on – relative to his motivation, his intentions, his biases, what his reason was for doing the buy. A number of things.
> So again, I would ask for a motion in limine that the Court instruct the State not to allow Officer Gogolin to testify to anything at this point, anything the CI has said to the officer. I think the CI – the only thing we should hear

> from the CI is on the tape, relative to what happened in the house or didn't happen in the house.

Thereafter, the court limited Detective Gogolin's testimony, only allowing him to testify that Lewis was an informant and that Lewis told Detective Gogolin that he could purchase marijuana from Johnson. The court did not specify on what grounds it was limiting the testimony.

[¶16.]     A motion in limine is at the threshold of proceedings and relates to preliminary matters. *See* Black's Law Dictionary 803 (8thed 2004). It can be an objection to the admissibility of evidence. *See* United States v. Flenoid, 415 F3d 974, 976 (8thCir 2005). "'Generally, parties must object to specific court action and state the reason underlying their objection so that the circuit court has an opportunity to correct any error.'" State v. Divan, 2006 SD 105, ¶9, 724 NW2d 865, 869 (quoting State v. McCrary, 2004 SD 18, ¶15, 676 NW2d 116, 121). This Court has held that "a hearsay objection at trial is not sufficient to preserve a confrontation clause objection on appeal." *Id.* (citation omitted). The facts of *Divan* reveal that hearsay was the *sole* ground alleged to prevent admission of the statement at issue therein. Admittedly, Johnson's counsel did not specifically allege a "confrontation rights" or "Sixth Amendment" violation as grounds for the motion; however, he did express his inability to cross-examine Lewis, and further referenced the memorandum opinion, which discussed the defendant's constitutional right to confront the witnesses against him. Although not an ideal example of a motion, it was sufficient to make the court aware of his concerns regarding Johnson's confrontation rights with respect to this statement. Moreover, the court's ruling, which limited the witness's testimony, was a definitive ruling to admit this

statement. *See* United States v. Malik, 345 F3d 999, 1001 (8thCir 2003). Therefore, this issue was preserved for appeal. Accordingly, we reach the merits of this issue as to both statements.

***Audio Recording***

[¶17.] Johnson contends that admitting the audio recording of the conversation that transpired within his residence into evidence violated his Sixth Amendment right to confrontation because Lewis was unavailable at trial and Johnson had no prior opportunity to cross-examine him.

[¶18.] The Confrontation Clause of the Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"[6] US Const amend VI. In *Crawford*, the United States Supreme Court held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[7] 541 US at 53-54, 124 SCt at 1365, 158 LEd2d 177.

[¶19.] *Crawford* did not precisely articulate what is considered "testimonial," but it provided some guidance. At a minimum, the Court announced, "testimonial"

---

6. Article VI, section 7 of the South Dakota Constitution similarly provides, "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face[.]" SD Const art VI, sec 7.

7. The United States Supreme Court recently extended this core holding of *Crawford* to certificates of state laboratory analysts identifying the material seized by police and connected to the defendant as cocaine of a certain quantity. Melendez-Diaz v. Massachusetts, 129 SCt 2527, 2009 WL 1789468 (2009).

includes statements made during police interrogations and prior testimony at a preliminary hearing, before a grand jury, or at a former trial. *Id.* at 68, 124 SCt at 1374, 158 LE2d 177. In describing testimonial statements, the Court also noted that testimony is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51, 124 SCt at 1364, 158 LE2d 177. Further, the Court offered a non-exclusive list of "formulations" of the term "testimonial": (1) "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine . . . ;" (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 51-52, 124 SCt at 1364, 158 LE2d 177 (internal citations omitted).

[¶20.] The substance of the conversation on the audio recording is between Johnson and his wife. Johnson's statements constitute admissions by a party-opponent and, as such, are by definition not hearsay under Federal Rule of Evidence 801(d)(2)(A). Because the prohibition annunciated in *Crawford* applies to hearsay statements, that prohibition does not cover Johnson's statements on the recording. Despite this, neither Johnson's nor his wife's statements are testimonial. An objective witness in those circumstances would not have reason to believe that the statements would be available for use at a later trial, as there was no realization that he or she was speaking to a government informant. *See Crawford,*

-11-

541 US at 51-52, 124 SCt at 1364, 158 LE2d 177. The Supreme Court specifically stated in *Davis v. Washington*, that statements made "unwittingly" to a government informant are "clearly nontestimonial."[8] 547 US 813, 825, 126 SCt 2266, 2275, 165 LEd2d 224 (2006) (citing Bourjaily v. United States, 483 US 171, 181-84, 107 SCt 2775, 2782-83, 97 LEd2d 144 (1987)). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 547 US at 821, 126 SCt at 2273, 165 LEd2d 224. Therefore, admission of neither Johnson's nor his wife's statements violate Johnson's Sixth Amendment right to confront his witnesses.

[¶21.] Lewis's statements on the recording are responses to questions posed by Johnson. The only statement made by Lewis pertinent to this case is Lewis's response that "it" is for a friend. However, the veracity of this statement, or any of Lewis's other recorded statements, was completely irrelevant to the case. Therefore, the statements were not hearsay, as they were not being offered for the truth of the matter asserted. Admission of Lewis's responses provided context for Johnson's admissible statements, making them intelligible for the jury.

---

8. *See also* Unites States v. Graham, 2008 WL 5424142, at *11 (DSD 2008). "For the statement to be 'testimonial,' the declarant himself must expect that the statement will be used as evidence in a later formal proceeding." *Id.* (citing United States v. Hendricks, 395 F3d 173, 182-83 (3rdCir 2005) (holding that neither *Crawford* nor the Confrontation Clause bars wiretap evidence or statements made to a confidential informant)). *See also* United States v. Saget, 377 F3d 223, 229 (2ndCir 2004) (holding that audio-taped statements made to confidential informant, whose true status was unknown to declarant, do not constitute testimony within the meaning of *Crawford*), *cert. denied,* 543 US 1079, 125 SCt 938, 160 LEd2d 821 (2005).

"Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." United States v. Tolliver, 454 F3d 660,666 (7thCir 2006) (citation omitted). Therefore, because Lewis's statements merely provided the framework or context within which Johnson's statements could be understood, Lewis's statements were properly admitted at trial. Accordingly, we affirm the circuit court's decision to admit this portion of the audio recording into evidence.

### Lewis's Statement that He Could Buy Marijuana from Johnson

[¶22.]      At the Police Department, Lewis informed Officer Gogolin that he could purchase marijuana from Johnson. Johnson contends that admission of this statement similarly violated his constitutional rights under the Sixth Amendment and *Crawford*. The State maintains that the circuit court properly allowed this statement "to establish background, context, and how events had unfolded."

[¶23.]      Under the teachings of *Crawford*, an objective witness acting as a government informant would believe his statement to law enforcement, regarding the ability to purchase drugs from a certain person, would be available for use at a later trial. *See Crawford*, 541 US at 51-52, 124 SCt at 1364, 158 LE2d 177. Accordingly, Lewis's statement was testimonial. The Supreme Court noted, however, that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n9, 124 SCt at 1369 n9, 158 LEd2d 177 (citation omitted). When out-of-court statements are not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant had the opportunity to cross-

examine the person *repeating* the out-of-court statement.  *See* Tennessee v. Street, 471 US 409, 414, 105 SCt 2078, 2081-82, 85 LEd2d 425 (1985); *see also* United States v. James, 487 F3d 518, 525 (7thCir 2007) (the admission of an FBI agent's testimony about what an informant had told him concerning the informant's prior drug dealings with a defendant who was being prosecuted for a drug offense did not violate the Confrontation Clause because the testimony was only admitted for the non-hearsay purpose of providing context for the government's decision to work with the informant, and the defendant had the opportunity to cross-examine the agent).  Here, Detective Gogolin was subjected to cross-examination.

[¶24.]        In its ruling to admit the statement into evidence, the circuit court did not specifically indicate the purposes for which the statement could be used.  The State alleges the statement was not used to establish the truth of the matter asserted, but rather to establish context and background.  Considering the substance of the statement at issue and the charges against Johnson, the State's argument establishes a fine line.  Even if Detective Gogolin's trial testimony was carefully elicited for the appropriate purpose of establishing why Johnson became the subject of police investigation, the State certainly crossed the line during its closing argument by arguing:

> And by the way, how do we know [Johnson] sold the drugs?  Otto Lewis told the Detective, I'm going to buy marijuana from Anthony Johnson.
>
>                     ***
>
> Now, do you really think Otto Lewis would have said I can buy marijuana from Anthony Johnson, and that he'd go there with a wire, that he'd take the $50, that he could come back from Anthony Johnson's house with $50 worth of marijuana, give it to the police, all of this time wearing a wire knowing there's a possibility he's in danger if Anthony Johnson found out.  That's

> why you have four cops there, in case something went bad because drug dealing is a dangerous business. Do you really think Otto Lewis would have done that if he wasn't buying from Anthony Johnson.

In these instances, the statement was offered to prove the truth of the matter asserted – that Lewis in fact purchased drugs from Johnson – and admission of the statement for this purpose was improper when the declarant was unavailable and not subjected to cross-examination. The State's use of the statement in this manner, without Lewis being available or Johnson having an opportunity to cross-examine him, violated Johnson's Sixth Amendment right to confrontation.

[¶25.]     The State argues that even if admission of the statement was error, it was harmless error. The State bears the burden of proving beyond a reasonable doubt the error was harmless. "'In determining whether an error is harmless, the reviewing court must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened.'" State v. Zakaria, 2007 SD 27, ¶18 n5, 730 NW2d 140, 145 n5 (quoting United States v. Hardy, 228 F3d 745, 751 (6thCir 2000)) (alteration in original). "In other words, we must find 'that it was more probable than not that the error materially affected the verdict.'" Id. (quoting United States v. Trujillo, 376 F3d 593, 611 (6thCir 2004)).

[¶26.]     The State failed to prove beyond a reasonable doubt that admission of this statement was harmless. Accord State v. Frazier, 2001 SD 19, ¶33, 622 NW2d 246, 259 (holding that admission of hearsay statements was not harmless error because "the evidence [was] not so overwhelming that [the] statements cannot be said to have weighted against [the defendant] in ultimately tipping the scales toward a guilty verdict"). This statement went to the heart of the State's case.

Arguably, it was the State's strongest piece of evidence in proving the identity of the individual who sold the marijuana, as none of the State's witnesses could testify whether anyone other than Johnson and his wife was in the residence when Lewis was present. In addition, the State referred to this statement on more than one occasion. "The comments were . . . not benign or a 'slip of the tongue.' They were extensive and repetitive comments that were more serious than a single, isolated statement." State v. Ball, 2004 SD 9, ¶34, 675 NW2d 192, 203 (citation omitted) (holding that the State failed to prove beyond a reasonable doubt that prosecutor's closing argument statements regarding defendant not testifying were harmless error). We hold "it was more probable than not that the error materially affected the verdict." Zakaria, 2007 SD 27, ¶18 n5, 730 NW2d at 145 n5 (quoting Trujillo, 376 F3d at 611). We reverse and hold that Lewis's statement that he could buy marijuana from Johnson is inadmissible.

[¶27.] **2. Whether there was sufficient evidence presented to prove beyond a reasonable doubt the elements of distribution of one ounce or less of marijuana and possession of marijuana.**

[¶28.] Although we reverse on the Confrontation Clause issue, it is proper to also examine Johnson's claim that the evidence was insufficient to prove the charges beyond a reasonable doubt. See Frazier, 2001 SD 19, ¶43, 622 NW2d at 260 (reaching the judgment of acquittal issue and analyzing the sufficiency of evidence even though the circuit court's Confrontation Clause determination was reversed). Our decision to consider this issue "rests on double jeopardy principles." Id. "Should we conclude that the evidence was insufficient, the State is constitutionally prohibited from retrying [the defendant]. If, on the other hand, we find the evidence

is sufficient, [the defendant] will be precluded from claiming double jeopardy protection at retrial." *Id.* (citations omitted).

[¶29.] This Court must determine "whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *Mulligan*, 2007 SD 67, ¶7, 736 NW2d at 812-13 (citation omitted). Moreover, "the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Id.* (citation omitted). Thus, "[a] guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." *Id.* (citation omitted). In addition, we must "consider all the evidence the [jury] had before it, including any evidence that is later determined to be inadmissible."[9] *See Frazier*, 2001 SD 19, ¶45, 622 NW2d at 261. Therefore, we review all the evidence admitted at trial, including Lewis's statement that he could purchase marijuana from Johnson.

[¶30.] Detective Gogolin testified that it was his policy to not direct informants to purchase drugs from any particular source. Detective Gogolin further testified to his drug training at both the state and federal levels, including his

---

9.   In *Frazier*, we noted the rationale for this rule:

> From a defendant's viewpoint, if the evidence [was] determined to be sufficient, such a review would constitute an invasion of the province of the jury. Conversely, if the evidence were determined to be insufficient, it would be unfair to the [prosecution] because other evidence might have been produced by the [state's] attorney at trial if the questioned evidence had been excluded there.

2001 SD 19, ¶45, 622 NW2d at 261 (quoting People v. Sisneros, 44 ColoApp 65, 606 P2d 1317, 1319 (ColoApp 1980)) (alterations in original).

knowledge of the terminology used in conjunction with drug transactions. He noted that the statement on the audio recording about "juicing it up" was a reference to drugs. The voice making this statement was identified as Johnson's. The other two voices heard on the recording were identified as belonging to Johnson's wife and Lewis.

[¶31.]     In addition, the evidence established that Lewis and his vehicle were searched before going to the address at issue. Neither search produced anything of importance. Lewis was wired with a transmitter and given $50. He was followed by police to the address in question, and Johnson had stipulated that he lived at this address. Further, no one other than Lewis entered or exited the residence during the surveillance, nor were any vehicles, other than the defendant's, parked near the residence. Thereafter, Lewis returned to the Police Department with 0.12 ounces of marijuana, an amount worth $50. A subsequent search revealed no other drugs on Lewis's person or in his vehicle, and the $50 was not located. We cannot say that the evidence was so insufficient to overturn the jury verdicts. Therefore, double jeopardy does not prohibit the retrial of Johnson on these charges. We remand for a retrial in accordance with this opinion.

[¶32.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.