#25461-a-GAS

**2010 S.D. 75**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

ERNEST HARRIS,                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOSEPH NEILES
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANDREW J. KNECHT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


MARK KADI
Minnehaha County Office
  of the Public Advocate
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

                                          CONSIDERED ON BRIEFS
                                          ON AUGUST 24, 2010

                                          OPINION FILED **09/22/10**

#25461

SEVERSON, Justice

[¶1.] Ernest Harris was convicted of two counts of Distribution of a Controlled Substance in violation of SDCL 22-42-2. He appeals, arguing that the trial court abused its discretion by admitting audio recordings of the two controlled buys of crack cocaine into evidence and by providing the jury with an aiding and abetting instruction. We affirm the trial court.

## BACKGROUND

[¶2.] In June 2008, a confidential informant working with the Sioux Falls Area Drug Task Force arranged to make a controlled buy of crack cocaine from Harris. Detective Thomas Schmitz of the Sioux Falls Police Department was the case agent for the operation and worked directly with the informant. Before the controlled buy, Detective Schmitz equipped the informant with a recording device. On the recording, Detective Schmitz stated the date and time, identified the informant, set forth the operation's purpose, and discussed safety procedures with the informant. Detective Schmitz also gave the informant $120 in bills with pre-recorded serial numbers to buy crack cocaine from Harris. The informant verbally acknowledged receipt of the money.

[¶3.] The informant then called Harris to arrange a meeting. The informant and Harris arranged to meet at Harris's room at the Cloud 9 Motel. The informant drove to the motel while Detective Schmitz and other Task Force members followed. Because the informant initially planned to meet Harris at a home near downtown Sioux Falls, she stopped along her route to wait for a surveillance unit to relocate to the Cloud 9 Motel. Upon arriving at the motel, Detective Schmitz and the

- 1 -

surveillance unit parked in the vicinity. Additionally, a Task Force member was equipped to listen to and record the conversation in the motel room, but no member of the Task Force was able to see what occurred in the motel room.

[¶4.]       When the informant arrived at the motel, Harris greeted her and invited her into his motel room. A few minutes later, Harris's daughter, Tara, arrived. The informant handed Harris $120. Harris kept twenty dollars and handed the $100 bill to Tara. According to the informant, Tara gave Harris some crack cocaine wrapped in a napkin, which he then handed to the informant. With the transaction complete, the informant asked Harris permission to return later to make another purchase and left to meet Detective Schmitz at a pre-determined location. At the meeting, the informant gave Detective Schmitz the crack cocaine that she purchased from Harris and related what occurred in the motel room.[1]

[¶5.]       Based on the success of the first controlled buy, Detective Schmitz directed the informant to arrange a second purchase of crack cocaine from Harris. This second transaction was also recorded. He gave the informant another $120 in pre-recorded bills. The informant called Harris, and again they agreed to meet at the Cloud 9 Motel. But when the informant arrived at the motel this second time, Harris informed her that they would meet Tara at a separate location. Harris and the informant drove separate vehicles to the corner of 12th Street and Prairie

---

1.    The informant described the first controlled buy differently in her recorded discussion with Detective Schmitz than at trial. In the recorded discussion, the informant told Detective Schmitz that she handed the $100 bill to Tara and that Tara handed her the crack cocaine. The informant told yet another version of events before the grand jury.

Avenue near downtown Sioux Falls. The informant met Tara at that location, and the informant drove around the neighborhood while she and Tara exchanged money for crack cocaine. After the informant left Tara with Harris, the informant met Detective Schmitz at a pre-determined location. Again, the informant gave Detective Schmitz the crack cocaine that she purchased and discussed the details of the purchase with him.

[¶6.] In October 2008, a Minnehaha County grand jury indicted Harris on two counts of Distribution of a Controlled Substance in violation of SDCL 22-42-2. The State later filed a Part II Information, alleging that Harris was a habitual offender. The case proceeded to trial in April 2009. The informant and Detective Schmitz both testified at trial, and the State introduced recordings of the controlled buys into evidence during Detective Schmitz's testimony. Additionally, the trial court, over Harris's objection, provided the jury with an aiding and abetting instruction. The jury returned a verdict of guilty on both counts. Harris appeals.

## ANALYSIS AND DECISION

[¶7.] **1.** **Whether the trial court abused its discretion by admitting recordings of the controlled buys of crack cocaine into evidence.**

[¶8.] At trial, Harris objected to the introduction of the recordings of the controlled buys into evidence on three grounds: lack of foundation as to identification, hearsay, and violation of his Sixth Amendment right to confrontation. The trial court overruled Harris's objections and admitted the recordings. A trial court's evidentiary rulings are presumed to be correct and are reviewed under the abuse of discretion standard. *State v. Boston*, 2003 S.D. 71, ¶

14, 665 N.W.2d 100, 105 (citing *State v. Goodroad*, 1997 S.D. 46, ¶ 9, 563 N.W.2d 126, 129). If error is found, it must be prejudicial before this Court will overturn the trial court's evidentiary ruling. *Id.* (citing *State ex rel. Dep't of Transp. v. Spiry*, 1996 S.D. 14, ¶ 11, 543 N.W.2d 260, 263).

[¶9.] Harris first argues that the State did not properly identify the voice on the recordings as Harris. Authentication or identification is a "condition precedent to admissibility" and "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." SDCL 19-17-1(a) (Rule 901(a)). Because the issue in this case is the identification of Harris's voice on the recordings, we turn to SDCL 19-17-1(5) (Rule 901(b)(5)). That statute provides that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker[ ]" is a proper method of authentication or identification. SDCL 19-17-1(5) (Rule 901(b)(5)).

[¶10.] The State offered the recordings of the controlled buys into evidence during Detective Schmitz's testimony:

> Q: And do those [recordings] accurately represent the transaction on June 17 as it occurred?
>
> A: Both transactions, yes. There are two separate recordings.
>
> Q: When you listened and reviewed those, did you recognize the male voice on the recordings?
>
> A: I did.
> Q: And who did you recognize that voice as?
>
> A: Ernest Harris.

> Q: Had you had contact physical and voice with Mr. Harris before?
>
> A: I have.

Because Detective Schmitz identified the voice on the recordings as Harris, the State laid proper foundation for the recordings.[2] Thus, the trial court did not abuse its discretion by overruling Harris's foundation objection.

[¶11.]     Harris next argues that the statements on the recordings constitute inadmissible hearsay. Essentially, the recordings of the controlled buys have three parts. Each recording begins with a "preamble," in which Detective Schmitz states the date and time, identifies the informant, sets forth the operation's purpose, and discusses safety procedures with the informant. During the "preamble," the informant also verbally acknowledges receipt of the pre-recorded bills. The bulk of each recording is conversations between Harris, Tara, and the informant occurring before, during, and after the controlled buy. Finally, at the end of each recording, the informant meets with Detective Schmitz to discuss the details of the controlled buy. Because the recordings contain statements from several individuals offered at trial for different purposes, we separately analyze each individual's statements on the recordings.

[¶12.]     We first turn to Harris's recorded statements. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or

---

2.     It is immaterial when Detective Schmitz became familiar with Harris's voice. Familiarity for purposes of voice identification "may be acquired either before or after the particular speaking which is the subject of the identification[.]" Rule 901(b) advisory committee's note (citing *People v. Nichols*, 378 Ill. 487,

(continued . . .)

hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(c)). Hearsay is generally inadmissible. SDCL 19-16-4 (Rule 802). But "[a] statement is not hearsay if it is offered against a party and is [ ] his own statement, in either his individual or a representative capacity[.]" SDCL 19-16-3(1) (Rule 801(d)(2)(A)). Harris's statements on the recordings are admissions by a party opponent under SDCL 19-16-3(1) (Rule 801(d)(2)(A)) and therefore are not inadmissible hearsay.

[¶13.]     We turn then to the recorded statements Tara and the informant made during the controlled buys. Harris's argument that these statements constitute inadmissible hearsay overlooks this Court's well-established "verbal acts" rule:

> Not all out-of-court statements are hearsay. The hearsay rule only prohibits admission of evidence of out-of-court statements offered to prove the truth of the out-of-court declaration. . . . Utterances made contemporaneously with or immediately preparatory to an act which is material to the litigation that tends to explain, illustrate, or show the object or motive of an equivocal act and which are offered irrespective of the truth of any assertion they contain, are not hearsay and are admissible.

*State v. Charger*, 2000 S.D. 70, ¶ 26, 611 N.W.2d 221, 226-27 (quoting *State v. Kelley*, 953 S.W.2d 73, 85 (Mo.App. 1997) (citing *State v. Copeland*, 928 S.W.2d 828, 848 (Mo. 1996))). For example:

> Testimony concerning telephone calls made to or received at a particular location has been held admissible frequently in prosecutions for bookmaking and other gambling activities, where such testimony is offered not to establish the truth of what was said over the telephone, but as evidence that the calls were made to the location for the purpose of placing bets.

---

(. . . continued)
        38 N.E.2d 766 (1942); *McGuire v. State*, 200 Md. 601, 92 A.2d 582 (1952); *State v. McGee*, 336 Mo. 1082, 83 S.W.2d 98 (1935)).

*Id.* ¶ 27, 611 N.W.2d at 227 (quoting *Best v. State*, 71 Md.App. 422, 526 A.2d 75, 80 (1987) (concluding that a police officer's testimony about the contents of a telephone conversation in which a third party called the defendant's residence was admissible because it was merely offered as evidence that the call was made to arrange an illegal drug transaction) (citing *Courtney v. State*, 187 Md. 1, 48 A.2d 430 (1946))).

[¶14.]		In *State v. Wallingford*, 43 S.W.3d 852, 856 (Mo.App. 2001), the court faced a set of facts somewhat similar to the present case.  In that case, the defendant challenged whether a police officer could testify about a conversation between an informant and the defendant that he overheard on a recording device placed on the informant during a controlled buy of crack cocaine.  The court noted that the conversation between the informant and the defendant "was an inextricable element of the sale." *Id.* (citing and discussing *State v. Moiser*, 738 S.W.2d 549, 556 (Mo.App. 1987)).  "The conversations . . . immediately preceded or were contemporaneous with the sale of the crack cocaine." *Id.*  They were "so inherently part of the crime of the sale of drugs that they [gave] meaning to the sale itself." *Id.*  The court thus held that the statements made by the informant during the controlled buy were not hearsay and were properly admitted into evidence at trial. *Id.*

[¶15.]		This rationale is equally applicable to the present case.  Tara's and the informant's statements during the controlled buys were "made contemporaneously with or immediately preparatory" to the purchases of crack cocaine from Harris and explain or illustrate what occurred in the motel room or in the informant's car. *See Charger*, 2000 S.D. 70, ¶ 26, 611 N.W.2d at 226 (citations omitted).  They were an

"inextricable element of the sale[s]" and "[gave] meaning to the sale[s.]" *See Wallingford*, 43 S.W.3d at 856. Accordingly, the statements were not offered to prove the truth of their substance, but rather to prove that the purchases of crack cocaine from Harris actually took place. *See Charger*, 2000 S.D. 70, ¶ 27, 611 N.W.2d at 227 (quoting *Best,* 71 Md.App. 422, 526 A.2d at 80). Or, in other words, they were offered "to establish what was done or created." *See id.* ¶ 25, 611 N.W.2d at 226 (quoting John W. Larson, *South Dakota Evidence* § 801.1, at 535 (1991)). Thus, the statements Tara and the informant made during the controlled buys are not inadmissible hearsay.

[¶16.] The informant's recorded statements to Detective Schmitz after the controlled buys are more problematic. Following each transaction, the informant met with Detective Schmitz to discuss the details of the controlled buy. During their discussions, the informant identified Harris and Tara as the individuals from whom she purchased crack cocaine. These identifications are admissible under SDCL 19-16-2(3) (Rule 801(d)(1)(C)), which provides: "A statement is not hearsay if [ ] the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is [ ] one of identification of a person made after perceiving him." But the informant and Detective Schmitz also discussed who accepted the pre-recorded bills and who handed the crack cocaine to the informant. These statements were offered at trial to prove the truth of their

substance.[3] Because these statements constitute inadmissible hearsay, the trial court abused its discretion by overruling Harris's hearsay objection to the recordings. *See, e.g., State v. Johnson*, 2009 S.D. 67, ¶ 8, 771 N.W.2d 360, 364-65 (noting that the trial court excluded the conversation between the informant and the detective after the controlled buy).

[¶17.] But "a defendant must prove not only that the trial court abused its discretion in admitting the evidence, but also that the admission resulted in prejudice." *State v. Lassiter*, 2005 S.D. 8, ¶ 13, 692 N.W.2d 171, 175 (citing *State v. Red Star*, 2001 S.D. 54, ¶ 10, 625 N.W.2d 573, 577 (citing SDCL 15-6-61)). "Error is prejudicial when, 'in all probability it produced some effect upon the final result and affected rights of the party assigning it.'" *Novak v. McEldowney*, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912 (quoting *State v. Smith*, 1999 S.D. 83, ¶ 39, 599 N.W.2d 344, 353). The informant testified at trial about the details of the controlled buys. And the State relied on the informant's trial testimony rather than her recorded discussions with Detective Schmitz in its closing argument. Therefore, although the

---

3.  Harris impeached the informant during cross-examination, even suggesting an improper financial motive to testify against Harris. SDCL 19-16-2(2) (Rule 801(d)(1)(B)) provides:

    > A statement is not hearsay if [ ] the declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is [ ] consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

    Because the informant described the first controlled buy differently in her recorded discussion with Detective Schmitz than at trial, the recordings of this discussion were not admissible as a prior consistent statement under SDCL 19-16-2(2) (Rule 801(d)(1)(B)).

trial court erred by overruling Harris's hearsay objection, the admission of the recordings into evidence did not prejudice Harris's substantial rights. *See* SDCL 15-6-61.

[¶18.]     Harris finally argues that admitting the informant's recorded hearsay statements to Detective Schmitz violated his Sixth Amendment right to confrontation. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"[4] U.S. Const. amend. VI. In *Crawford v. Washington,* the United States Supreme Court held that this provision bars "admission of testimonial statements of a witness *who did not appear at trial* unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Johnson,* 2009 S.D. 67, ¶ 18, 771 N.W.2d at 368 (quoting *Crawford,* 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004)) (emphasis added). Because the informant testified at trial during the State's case-in-chief and was thoroughly cross-examined by Harris's counsel, Harris's argument that admission of

---

4.     Similarly, Article VI, Section 7 of the South Dakota Constitution provides: "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face[.]" S.D. Const. art. VI, § 7. Harris has not asserted, and we have not found, a basis to distinguish the protections afforded by the South Dakota Constitution from those provided by the federal Constitution in this case. Our analysis thus applies equally to both constitutional provisions. *See State v. Thunder,* 2010 S.D. 3, ¶ 12, 777 N.W.2d 373, 378 (citing *State v. Deneui,* 2009 S.D. 99, ¶ 12, 775 N.W.2d 221, 229).

the informant's recorded statements to Detective Schmitz violated his Sixth

Amendment right to confrontation is without merit. *See id.*

[¶19.] **2. Whether the trial court abused its discretion by providing the jury with an aiding and abetting instruction.**

[¶20.] Harris argues that the trial court abused its discretion by providing

the jury with an aiding and abetting instruction. SDCL 22-3-3 states: "Any person

who, with the intent to promote or facilitate the commission of a crime, aids, abets,

or advises another person in planning or committing the crime, is legally

accountable, as a principal to the crime." And the trial court instructed the jury:

> All persons who directly commit the acts constituting the crime
> or who did aid and abet in its commission, although not present,
> are considered as principals in the crime and thus committed
> and are equally guilty. A person aids and abets the commission
> of the crime if the defendant with the intent to promote or
> facilitate the commission of a crime, aids, abets or advises
> another person in planning or committing the crime. If you find
> beyond a reasonable doubt that one person committed the
> offense charged and the other aided and abetted the commission
> of such crime, both would be guilty.

[¶21.] We have previously clarified our standard of review for jury

instructions as follows:

> A trial court has discretion in the wording and arrangement of
> its jury instructions, and therefore we generally review a trial
> court's decision to grant or deny a particular instruction under
> the abuse of discretion standard. However, no court has
> discretion to give incorrect, misleading, conflicting, or confusing
> instructions: to do so constitutes reversible error if it is shown
> not only that the instructions were erroneous, but also that they
> were prejudicial.

*State v. Cottier,* 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125 (quoting *State v. Packed,*

2007 S.D. 75, ¶ 17, 736 N.W.2d 851, 856). "Erroneous instructions are prejudicial

. . . when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party." *Id.* (quoting *Papke v. Harbert*, 2007 S.D. 87, ¶ 13, 738 N.W.2d 510, 515).

[¶22.]    Harris first argues that the aiding and abetting instruction was improperly given because the indictment did not charge an aiding and abetting theory. This argument is without merit. "It is settled law that a conviction may be supported by proof that the defendant was either an aider or abettor even though the charging instrument charged him as a principal." *State v. Miller*, 429 N.W.2d 26, 41 (S.D. 1988) (quoting *State v. Johnson*, 272 N.W.2d 304, 305 (S.D. 1978)).

[¶23.]    We must next consider whether the instruction on aiding and abetting was supported by the evidence presented at trial. A trial court should instruct the jury on issues "supported by competent evidence in the record[.]" *Johnson v. Armfield*, 2003 S.D. 134, ¶ 7, 672 N.W.2d 478, 481 (quoting *Artz v. Meyers*, 1999 S.D. 156, ¶ 8, 603 N.W.2d 532, 534). In determining whether the instruction was proper, the State's claim that the evidence was sufficient to support an aiding and abetting instruction is viewed "in the light most favorable to upholding the verdict." *See id.* (quoting *Parker v. Casa Del Rey*, 2002 S.D. 29, ¶ 5, 641 N.W.2d 112, 115).

[¶24.]    Evidence relevant to an aiding and abetting theory was presented at trial. The informant called Harris to arrange both controlled buys. As to the first transaction, Harris actually accepted money from the informant and handed the crack cocaine to the informant. On the second controlled buy, Harris only set up the meeting between Tara and the informant in which the exchange of drugs and money took place. The evidence presented at trial therefore supported the theory

that Harris, if not the principal, facilitated the commission of the crime.  On these facts, we cannot conclude that the trial court abused its discretion by providing the jury with an aiding and abetting instruction.

[¶25.]	Affirmed.

[¶26.]	GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and ZINTER, Justices, concur.