#27790-a-DG
**2017 S.D. 61**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

LEE ANN STENSTROM,                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


MARK KADI of
Minnehaha County Office
 of the Public Advocate
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.


\* \* \* \*

ARGUED FEBRUARY 14, 2017
OPINION FILED **09/27/17**

#27790

GILBERTSON, Chief Justice

[¶1.]    Lee Ann Stenstrom appeals her termination from the drug-court program and subsequent revocation of suspension of execution of a four-year sentence. Stenstrom argues the drug court[1] violated her statutory and constitutional rights to due process and counsel by denying her request to permit her attorney to attend drug-court-team meetings. She also argues her termination from the drug-court program was error. We affirm.

**Facts and Procedural History**

[¶2.]    Stenstrom was initially arrested on July 1, 2014, in connection with a law-enforcement investigation into possible drug dealing at the Power Keeno Casino in Sioux Falls. Stenstrom was in possession of a hypodermic needle and a plastic "snort tube" containing methamphetamine. A grand jury indicted her on a variety of charges, but she was released from jail on a personal-recognizance bond.[2]

[¶3.]    Stenstrom subsequently failed to appear for a pretrial conference hearing on November 6, and the court issued a bench warrant for her arrest. She was again arrested and released on personal recognizance. She failed to appear for another pretrial conference hearing on January 21, 2015. Another bench warrant was issued, and Stenstrom was arrested for a third time on February 14. Following

---

1.    As used in this opinion, the term *drug court* refers to the judge presiding over proceedings relating to the drug-court program. When referring to the program itself or the multidisciplinary team that advises the drug-court judge, this opinion will use the terms *drug-court program* and *drug-court team*, respectively.

2.    Stenstrom was indicted for possessing methamphetamine, possessing drug paraphernalia, possessing an unauthorized article in jail, and for impersonation with intent to deceive law enforcement.

-1-

this arrest, she was charged with failing to appear as well as additional, felony drug charges.

[¶4.]	On April 27, Judge Patricia Riepel arraigned Stenstrom. Pursuant to an agreement with the State, Stenstrom pleaded guilty to one count of possessing a controlled substance (a Class 5 felony). In exchange, the State agreed to drop the other offenses charged in the indictment, Stenstrom's failure to appear, and the additional drug charges arising out of the February 14 arrest. The agreement also required Stenstrom to successfully complete the drug-court program. The circuit court imposed a four-year sentence on Stenstrom but suspended its execution on the condition that Stenstrom complete the drug-court program and undergo three years of supervised probation.

[¶5.]	Stenstrom was released on May 1, 2015, and was directed to reside at a sober-living house used by drug-court participants. Four days later, Stenstrom left the house and failed to return. She then failed to attend both a drug-court hearing and a meeting with her court-services officer on May 7. Another warrant was issued for her arrest. On July 14, Stenstrom was arrested on the warrant and for possessing a controlled substance. The next day, she told her court-services officer that she had used methamphetamine and marijuana during her absence from the sober-living house. A subsequent urinalysis confirmed her confession.

[¶6.]	On July 23, 2015, the drug-court team met to consider whether Stenstrom should be terminated from the drug-court program. The next day, Stenstrom's court-services officer filed a drug-court termination report alleging Stenstrom violated the requirements of the drug-court program by leaving the

sober-living house, failing to appear in drug court, failing to meet with her court-services officer, using methamphetamine and marijuana, and by committing an additional drug offense. Even so, Stenstrom was permitted to remain in the program, and she was released from custody on August 28.

[¶7.] Stenstrom continued to struggle with meeting the program's requirements. On August 29, Stenstrom met with her court-services officer, who noticed alcohol in Stenstrom's residence. Stenstrom admitted to consuming alcohol, and she blew a 0.029 on a preliminary breath test (PBT). On September 8, 2015, Stenstrom was placed in the 24/7 Sobriety Program. She was required to refrain from using alcohol or drugs. She failed another PBT on September 20, registering a 0.040. On September 28, a drug test indicated she had used methamphetamine at some point in the previous two weeks.

[¶8.] On October 2, 2015, Stenstrom was placed at the Changes and Choices halfway house. On October 16, she informed her court-services officer that she was frustrated by the rules at the halfway house. She was also upset because her roommate had been romantically involved with an individual who killed Stenstrom's nephew in 2003. The officer told Stenstrom that he would address her concerns with the halfway house's staff and that Stenstrom should also do so. Instead, Stenstrom left the house and did not return.

[¶9.] Stenstrom subsequently failed to appear before the drug court on October 22. The drug-court team met and proposed terminating Stenstrom from the program. Another warrant was issued for Stenstrom's arrest, and her court-services officer filed a drug-court termination report on October 26. The report

alleged Stenstrom had violated the drug-court program's conditions by leaving the halfway house without permission, using alcohol and methamphetamine, and evading supervision.

[¶10.] On December 28, Stenstrom was arrested for aggravated eluding and driving with a suspended license, and an attorney was appointed to represent her. The drug-court team then met again on December 31, and another proposal was made to terminate Stenstrom from the drug-court program. On the same day, her court-services officer filed another termination report alleging Stenstrom violated the conditions of the drug-court program by committing aggravated eluding and driving with a suspended license.

[¶11.] On January 6, 2016, Stenstrom asked the drug court to permit her attorney to attend drug-court-team meetings. In a hearing held on January 21 and 28, the drug court denied Stenstrom's request, and the State submitted exhibits and witness testimony in support of the October 2015 termination report. Stenstrom's attorney presented argument and cross-examined the State's witness. Although given the opportunity to do so, Stenstrom did not present any evidence or testimony disputing the termination report.

[¶12.] With Stenstrom's consent, the drug court moved on to the question whether to terminate her from the program. Stenstrom was given another opportunity to address the drug court and present evidence. She read a prepared statement to the drug court, and her attorney called one witness. After confirming Stenstrom had nothing further to present, Judge Riepel retired to a closed-door meeting with the rest of the drug-court team. Judge Riepel reminded the team that

she had previously found that Stenstrom violated the terms and conditions of her probation. She then asked each team member to vote "yay" or "nay" on the question whether to terminate Stenstrom from the drug-court program. The team unanimously recommended termination, and Judge Riepel confirmed that they did so on the basis of the testimony and exhibits previously submitted. After returning to the courtroom, Judge Riepel informed Stenstrom that the drug-court team unanimously recommended terminating her from the program.

[¶13.] On February 4, 2016, following Stenstrom's termination from the drug-court program, the State filed a motion to revoke the suspension of execution of her sentence. On February 11, the motion was heard by Judge Robin Houwman, and Stenstrom appeared with her attorney. The court informed Stenstrom of her rights; specifically, the court told Stenstrom that she had the right to a hearing on the question of revocation. The court emphasized that at such hearing, Stenstrom would be presumed innocent, that the State would have the burden of proving she violated the terms of her suspended sentence, that she would be able to call witnesses, and that she would have an opportunity to cross-examine any witness called by the State. Stenstrom waived her rights and admitted to violating the conditions of her suspended sentence. The circuit court accepted her admission and reinstated Stenstrom's original, four-year sentence.

[¶14.] Stenstrom appeals, raising five issues:

1. Whether a drug-court participant has a statutory right to have her attorney present at drug-court-team meetings.

2. Whether the drug court's decision to keep team meetings closed to the public violated Stenstrom's right to due process.

3.     Whether the drug court's decision to keep team meetings closed to the public violated Stenstrom's right to counsel.

4.     Whether the drug court abused its discretion by terminating Stenstrom from the drug-court program.

5.     Whether the circuit court abused its discretion by reinstating Stenstrom's four-year sentence.

## Analysis and Decision

[¶15.]     This case involves a jurisdictional question not addressed by the parties.[3] Stenstrom filed a notice of appeal regarding the circuit court's decision to revoke the suspension of execution of her sentence. In her brief, Stenstrom asserts this Court has appellate jurisdiction under SDCL 15-26A-3, which applies to appeals "from the *circuit court*[.]" (Emphasis added.) Yet, the first four issues Stenstrom raises pertain to actions taken by the *drug-court program*. This Court has only "such appellate jurisdiction as may be provided by the Legislature[.]" S.D. Const. art. 5, § 5. Therefore, we may not directly review the drug court's actions in this appeal.

[¶16.]     Even so, this Court does have appellate jurisdiction over the circuit court's decision to revoke the suspension of execution of Stenstrom's sentence. Within the context of revocation, the actions of a drug-court program may be considered indirectly when a drug-court participant resists a motion for revocation by alleging her termination from the drug-court program was the result of some mistake or impropriety on the part of the program. In this case, however,

---

3.     This Court is "required to take notice of jurisdictional questions, whether presented by the parties or not." *State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871 (quoting *Dale v. City of Sioux Falls*, 2003 S.D. 124, ¶ 6, 670 N.W.2d 892, 894).

Stenstrom failed to make such an argument at the revocation hearing. At the revocation hearing, Stenstrom initially indicated she would contest the propriety of her termination from the drug-court program.[4] But after being advised of her rights, Stenstrom explicitly waived the right to contest revocation, declining to offer evidence or argument challenging the State's assertion that she violated the terms of her suspended sentence.

[¶17.] The only real issue in this appeal, then, is whether the circuit court abused its discretion by revoking the suspension of execution of Stenstrom's sentence and by reinstating her original, four-year sentence. A court's decision to revoke the suspension of execution of a sentence is reviewed for an abuse of discretion. *State v. Divan*, 2006 S.D. 105, ¶¶ 6-14, 724 N.W.2d 865, 869-71. The circuit court conducted an independent review of Stenstrom's case prior to deciding to revoke and after providing Stenstrom an opportunity to present evidence and argument. As noted above, Stenstrom had been in the drug-court program for merely four days before first absconding. While absent from the program, she used

---

4. The following conversation occurred between the circuit court and Stenstrom's attorney:

> **[Stenstrom's Attorney]**: My client will admit that she was terminated from Drug Court, but we don't wish to waive the propriety of that termination, so we can see historically that it happened, but we made a number of motions in the other court, . . . wherein we want to be able to contest the determination was proper.
>
> I don't want to be conceding by admitting that we waived any of those issues. So that's how we are prepared to proceed.
>
> **[Court]**: You have made your record and preserved any of those issues for appeal. Absent that issue, you are prepared to proceed with an admission and sentencing today?
>
> **[Stenstrom's Attorney]**: Yes.

multiple controlled substances and skipped meetings with the drug court and her court-services officer. She returned to the program only after being arrested again, but was given another chance. One day after being released from custody, she failed a PBT and had alcohol visibly present in her residence. She failed another PBT one month later, and a week after that, she tested positive for methamphetamine use. Yet, the drug court gave Stenstrom another chance. In response, Stenstrom absconded from the program again, skipping a drug-court hearing and a meeting with her court-services officer. She was subsequently arrested on additional charges. Under these circumstances, we do not think the circuit court's decision to revoke was "a choice outside the range of permissible choices." *State v. Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d 75, 83 (quoting *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622).

[¶18.]     Even so, Stenstrom contends that "[i]mposition of a sentence on its full entirety conflicts with [the] Best Practice Standards['] concerns about augmenting sentences . . . ." She points out that under these standards, when it becomes necessary to terminate a participant, "the participant should not be punished or receive an augmented sentence for trying, but failing, to respond to treatment[.]" 1 National Association of Drug Court Professionals, *Adult Drug Court Best Practice Standards* § IV(G) cmt., at 45 (2013).[5] This argument is meritless. The circuit court did not increase Stenstrom's sentence; it merely revoked the suspension of execution of the previously determined sentence. Thus, the sentence imposed was

---

5.     SDCL 16-22-5.3 required the State Court Administrator's Office to implement statewide standards in accordance with these standards.

punishment solely for committing a class 5 felony—not punishment for failing the program. Moreover, the court gave Stenstrom credit for 206 days previously served. Thus, the circuit court did not augment Stenstrom's sentence.

## Conclusion

[¶19.] SDCL 15-26A-3 does not authorize this Court to review the actions of the drug-court program directly. By waiving her right to contest the State's motion for revocation, Stenstrom failed to preserve the issue of her termination for indirect review. The circuit court conducted an independent review of the facts, and its decision to revoke the suspension of execution of Stenstrom's sentence was not an abuse of discretion.

[¶20.] We affirm.

[¶21.] ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired Justice, concur.