#29163-a-PJD
**2021 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

   v.

MELISSA LAURA KARI,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE NATALIE DAMGAARD
Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff and
                                              appellee.


JANET C. OLSON
Sioux Falls, South Dakota                     Attorney for defendant and
                                              appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **05/26/21**

#29163

DEVANEY, Justice

[¶1.]     In this appeal from a revocation of a suspended sentence, the defendant argues that the sentencing court was required to make its own determination whether grounds for termination from the DUI court program existed before deciding whether to revoke her suspended sentence. She also argues that this Court can review the propriety of the DUI court's termination decision when reviewing the sentencing court's order revoking her suspended sentence. Finally, she argues that the sentencing court abused its discretion in revoking her suspended sentence. We affirm.

**Factual and Procedural Background**

[¶2.]     On September 1, 2018, a bystander found Melissa Kari passed out by Covell Lake in Sioux Falls with her crying one-month-old son in an infant carrier beside her. She was highly intoxicated. The bystander shook Kari awake, and she stumbled toward an apartment building taking the infant carrier with her. Another bystander then saw Kari fall on top of the infant carrier, causing her son, who was still crying, to fall out. Kari grabbed him with one hand and put him back into the carrier.

[¶3.]     Law enforcement was called, and officers made contact with Kari at her residence and with the two bystanders. Inside Kari's apartment, the officers observed empty beer cans scattered about and found Kari intoxicated. The officers determined that her son was not receiving the care he needed. Kari, who was on probation at the time, was arrested. At the jail, her preliminary breath test showed a blood alcohol content of .299 percent.

[¶4.] Kari was charged by complaint, then by grand jury indictment, with abuse or cruelty to a minor under seven years old. The State also filed a part II habitual offender information, alleging that Kari had four prior felony convictions: three DUIs and one possession of a controlled substance. Because Kari was on probation at the time of the most recent charge, the State filed a motion to revoke probation. The State and Kari thereafter entered into a plea agreement, whereby Kari would plead guilty to the current charge, and in exchange, the State would dismiss the motion to revoke and the part II. The State also agreed to recommend a suspended execution of sentence on the condition that Kari successfully complete the DUI court program. After accepting Kari's guilty plea, the circuit court (hereinafter "sentencing court") sentenced Kari to ten years in the penitentiary and suspended the execution of the entire ten-year sentence on multiple conditions, including that Kari be placed on supervised probation for five years, have no drug- or alcohol-related offenses, and successfully complete the DUI court program.

[¶5.] Kari began participating in the DUI court program in January 2019, and achieved some of her goals, but she also had setbacks. Her court services officer submitted reports to the DUI court documenting the dates and times alcohol was detected via Kari's SCRAM bracelet. The reports indicated that alcohol was detected on March 8–11, April 6, April 8–9, April 14, April 15–16, April 23, April 24, June 30, and July 1. The reports also related that Kari left the boundaries of Minnehaha County on April 15 without permission from her court services officer and refused to stop having contact with her boyfriend.

[¶6.] On July 23, 2019, Kari was given written notice of a recommendation to terminate her from the program. The grounds included: violating the program rules, concerns for public safety, being a threat to the integrity of the program, no longer working toward recovery, exhaustion of available treatment options, tampering with alcohol screening tests, and inability to pass alcohol screening tests.

[¶7.] The DUI court ordered Kari to be detained and held a termination hearing on August 6, 2019. At the hearing, the State presented expert testimony to establish that the SCRAM bracelets worn by Kari properly functioned and that the readings from those bracelets validly indicated alcohol consumption events. A court services officer also testified about Kari's violations and actions while she was a participant in the program.

[¶8.] Kari disputed that she had consumed alcohol on the dates alleged in the violation reports. She also disputed the validity of the SCRAM readings. Kari claimed that the SCRAM bracelets had not been timely calibrated, and as a result, they falsely reported alcohol consumption events. She presented expert testimony from Joe Anderson to challenge the validity of the SCRAM readings. Kari also presented evidence that she had a clean urine sample on July 3, 2018, via a test conducted by her court services officer and asserted this showed that the SCRAM reading reporting an alcohol consumption event on July 1 was wrong.

[¶9.] At the conclusion of the evidence, Kari personally addressed the DUI court. She maintained that she did not consume alcohol and requested an opportunity to prove that she has "fully surrendered to the program and to the judgment of the team." The DUI court judge then asked, "Is it your representation

to myself and to the team that you have not consumed alcohol since you've been in the program?" Kari answered, "Yes." The judge further inquired, "What about the day before you went to Sisseton?" Kari replied, "I ended up drinking alcohol."

[¶10.]     After conferring with the DUI court team, the judge concluded that she was reasonably satisfied based on the evidence presented that Kari had an alcohol consumption event as alleged. The judge noted concessions by Kari's expert witness that some of the readings on Kari's SCRAM bracelet between June 30 and July 1 and prior to June 30 were consistent with an alcohol consumption event, even if other factors affected the bracelet's performance. The judge found Kari in violation of the DUI court program conditions and terminated her from the program. The additional grounds specified in the termination order included that Kari was a threat to the integrity of the program, was no longer working toward recovery, and that available treatment options had been exhausted.

[¶11.]     On August 13, 2019, the State filed a motion to revoke Kari's suspended sentence, alleging that she had violated a condition of her sentence by being terminated from the DUI court program. The sentencing court held a hearing to advise Kari of her rights and to discuss preliminary matters related to the motion to revoke. During this hearing, the State raised a concern about Kari's intent to challenge the propriety of the DUI court's termination decision, noting that the DUI court had already held hearings on the underlying violations. In the State's view, it would not be in the sentencing court's purview to review the decisions made by the DUI court. Counsel for Kari disagreed and argued that in light of *State v. Stenstrom*, 2017 S.D. 61, 902 N.W.2d 787, the sentencing court would have

authority to "decide whether [Kari] did, in fact, violate the terms and conditions of the DUI court[.]" Kari's counsel requested a full evidentiary hearing and the appointment of an expert to testify at the hearing.

[¶12.] The sentencing court noted that while under *Stenstrom*, it does not have jurisdiction over the drug court's actions, *Stenstrom* also stated that the court may "[w]ithin the context of revocation" consider the actions of the drug court indirectly. *See* 2017 S.D. 61, ¶ 16, 902 N.W.2d at 791. The sentencing court therefore decided to permit Kari to present evidence at the revocation hearing related to her termination from the DUI court program.

[¶13.] At the beginning of the September 30, 2019 revocation hearing, the State requested that the court reconsider its decision to allow Kari to present evidence challenging the basis of the DUI court's termination decision. The State argued that Kari should not be given "a second bite at the apple" or be permitted to collaterally attack the DUI court's termination decision at her pending revocation hearing.

[¶14.] Kari, in response, asserted that because the only alleged violation in the motion to revoke was her termination from the DUI court program, the sentencing court must independently consider whether there were grounds to support the termination decision before deciding whether she violated a condition of her suspended sentence. Kari also noted that in *Stenstrom*, the Court determined that the defendant waived the right to contest a revocation because she had "declin[ed] to offer evidence or argument challenging the State's assertion that she violated the terms of her suspended sentence." *See id.* ¶ 16, 902 N.W.2d at 792.

Based on this holding, Kari explained that she "obviously [couldn't] admit that she was terminated from the specialty court" because then "she would be essentially giving up her right to an appeal[.]"

[¶15.] The court agreed that the waiver holding in *Stenstrom* meant Kari could not admit to the alleged ground for revocation if she wanted to preserve her right to appeal the determination that she violated a condition of her suspended sentence. However, the court rejected Kari's argument that it could review the propriety of the DUI court's termination *decision*, noting that there is no statutory authority for the court to do so, and even if it could, there is no statutory authority to order her to be reinstated back into the DUI court program. Thus, the court limited its inquiry to whether Kari was in fact terminated from the DUI court program and whether that constituted a violation of a condition of her suspended sentence.

[¶16.] Kari then argued to the court that she was not seeking to be reinstated in the DUI court program or to have the DUI court's termination decision reversed. Rather, she was requesting that the sentencing court determine on its own whether it believed Kari consumed alcohol while in the program before deciding to revoke her suspended sentence. In her view, her termination from the DUI court program alone should not automatically result in a revocation of her suspended sentence when the underlying reason for her termination was, in her view, based on invalid SCRAM readings.

[¶17.] In considering Kari's argument, the court noted that the DUI court termination order reflected that Kari was terminated from the program for reasons

in addition to alcohol consumption. The court commented that all these reasons, including the fact that Kari is contesting the SCRAM readings, could be considered in mitigation or aggravation of the sentence to be imposed. The court noted, however, that these things would go toward "the weight of [any] disposition as opposed to whether or not termination was proper." Within these parameters, the court allowed Kari to present expert testimony, but emphasized that the only reason the court was allowing this testimony was so that Kari did not waive her right to appeal.

[¶18.] At the hearing on the motion to revoke, the sentencing court heard expert testimony from Anderson, which was substantially similar to his testimony at the DUI court termination hearing. The court also heard testimony from Kari's court services officers, who testified about Kari's actions while she was participating in the program. After considering this evidence, the sentencing court found that Kari had been terminated from the DUI court program before successful completion. The court then concluded that it was reasonably satisfied that Kari had violated a condition of her suspended sentence.

[¶19.] The court then proceeded to consider the parties' sentencing recommendations. The State recounted the facts supporting Kari's underlying conviction and then related the opportunities she was given in the DUI court program. In particular, the State highlighted that Kari twice appeared before the DUI court judge for violations that could possibly have led to termination, but rather than terminating her, the judge allowed her to pursue other options in the hope that she would ultimately succeed in the program. The State further noted

that Kari had attended inpatient treatment, but soon after finishing treatment, she resumed drinking alcohol, which ultimately led to her termination from the program. The State asserted that Kari has a serious alcohol problem that she has not accepted, which has inhibited her ability to be successful while on supervision. The State therefore requested that the court impose the full ten-year prison sentence previously suspended.

[¶20.] Kari's defense counsel, on the other hand, referred to letters submitted to the court on behalf of Kari attesting to facts that would support keeping her on probation. For example, counsel suggested that because she had a job and a place to live, she could be successful if given a further opportunity. In regard to Kari's alleged consumption of alcohol, counsel asserted that the SCRAM readings showed a "false positive." Aside from these SCRAM readings, defense counsel argued there were no indications that Kari had been drinking, noting that no one testified to seeing her consume alcohol. Counsel further recounted the positive actions Kari had accomplished, including obtaining employment, going to treatment, and attending AA. Ultimately, defense counsel requested that Kari not be sentenced to prison so that other resources could be exhausted, including the use of other options to monitor her alcohol consumption, like the 24/7 program. Alternatively, counsel requested that the court not impose the full ten-year sentence.

[¶21.] After considering both parties' arguments, the evidence and testimony presented, including the evidence presented at the termination hearing before the DUI court and Kari's personal statement, the court sentenced Kari to ten years, but suspended five years, and gave her credit for time served. The court noted that

Kari was on regular probation when she was charged with abuse or cruelty of a minor and then observed that Kari was unsuccessful despite a higher level of supervision via the DUI court program. Therefore, the court did not believe regular probation would be appropriate. Given the evidence presented, including Kari's termination from the DUI court program for not only drinking but also her dishonesty, the court concluded that placing Kari back on regular probation would "place the community and others at risk[.]"

[¶22.] Kari appeals, asserting the sentencing court erred in not deciding on its own whether she was properly terminated from the DUI court program and abused its discretion in revoking her suspended sentence.

## Analysis and Decision

[¶23.] Kari claims the sentencing court was required to make its own determination whether grounds existed to terminate her from the DUI court program before deciding whether to revoke her suspended sentence. She contends that the court's failure to do so constitutes an abuse of discretion. Kari notes that the only basis asserted by the State in support of its motion to revoke was her termination from the program, and in her view, the State could not rely on the mere fact of termination when she disputed whether the termination was proper.

[¶24.] While it is well settled that we review a circuit court's decision to revoke a suspended sentence for an abuse of discretion, *see Stenstrom*, 2017 S.D. 61, ¶ 17, 902 N.W.2d at 792, this appeal requires us to first address the import of *Stenstrom* and the interplay between a termination decision by a specialty court and the subsequent decision by a sentencing court to revoke a suspended sentence

because of the termination. In *Stenstrom*, we rejected the defendant's argument that this Court has appellate jurisdiction under SDCL 15-26A-3 to *directly* review actions of a drug court via an appeal of a circuit court's order to revoke a suspended execution of sentence. *Id.* ¶ 15, 902 N.W.2d at 791. However, we further explained that "[w]ithin the context of [the circuit court's] revocation, the actions of a drug-court program *may be considered indirectly* when a drug-court participant resists a motion for revocation by alleging her termination from the drug-court program was the result of some mistake or impropriety on the part of the program." *Id.* ¶ 16 (emphasis added).

[¶25.] Here, the sentencing court was correct in observing that no law gives a circuit court judge appellate jurisdiction to review the final decisions of another circuit court judge. More particularly, there are no statutes authorizing an appeal from a decision made by a specialty court to the circuit court. Circuit courts only "have such appellate jurisdiction as may be provided by law." S.D. Const. art. 5, § 5. Relevant here, SDCL 16-6-10 provides: "The circuit court has jurisdiction of appeals from all final judgments, decrees, or orders of all courts of limited jurisdiction, inferior officers, or tribunals, *in the cases prescribed by statute*." (Emphasis added.) Importantly, when the Legislature created specialty courts in 2013 to supervise adult probationary sentences post-adjudication, it did not give specialty courts the same kind of final adjudicative authority as that granted to courts of general jurisdiction and courts of limited jurisdiction.[1] Rather, "a drug court is a court

---

1. SDCL 16-6-10 provides the circuit court with jurisdiction of appeals from the final "orders of all courts of limited jurisdiction[.]" This includes a right of

(continued . . .)

supervised alternative to incarceration and includes drug, driving under [the] influence, and other specialty court dockets aimed at increasing offender accountability and decreasing recidivism." SDCL 16-22-3.

[¶26.] This Court likewise does not have statutory authority to exercise appellate jurisdiction to directly review the "Order of Termination from DUI Court" at issue here. In *Stenstrom*, we noted that appeals under SDCL 15-26A-3 must be from judgments or orders from the *circuit court*. 2017 S.D. 61, ¶ 15, 902 N.W.2d at 791. Although it appears from the record that after *Stenstrom*, the Second Circuit attempted to create a separate appeal avenue for DUI court program participants by including the participant's circuit court criminal file number on the caption of the DUI court's termination order and having the DUI court judge sign it as a *circuit court* judge, this approach merely places form over substance. The termination decision was made by the DUI court judge acting within a specialty court program. It was not a decision by a circuit court exercising its general jurisdiction over a suspended sentence.

_____

(. . . continued)

appeal "from any final order or judgment of the magistrate court . . . ." SDCL 16-12B-16. "Any magistrate court with a magistrate judge presiding has . . . jurisdiction to administer and preside over an adult probationary drug court program." SDCL 16-12B-14.1. However, SDCL 16-12B-14.1 only authorizes a magistrate judge to "administer and preside" over the probationary sentence; it does not provide jurisdiction to sentence the offender or enter a final order or judgment as to any offender. Therefore, the jurisdiction of a specialty court judge is limited to imposing sanctions as provided in SDCL 16-22-6.1, including the removal of a participant from the program, as the DUI court did here. As such, there is no right to appeal to the circuit court a decision of either a circuit court judge or a magistrate court judge presiding over a specialty court program.

[¶27.]    Kari further suggests that this Court could review the DUI court's termination decision under SDCL 23A-32-9 as an order, ruling, or determination involving the merits and necessarily affecting the sentencing court's order revoking her suspended sentence. She likens the DUI court's termination order to any pretrial order that is appealable at the conclusion of the case. She then contends that "this Court may *reverse the DUI court termination* along with the circuit court order revoking Kari's suspended sentence." (Emphasis added.)

[¶28.]    The language of SDCL 23A-32-9 does not authorize this Court to review the DUI court's termination decision. SDCL 23A-32-9 provides: "On an appeal from a judgment the Supreme Court may review any order, ruling, or determination *of the trial court,* involving the merits and necessarily affecting the judgment and appearing upon the record including an order denying a new trial, and whether any such order, ruling, or determination is made before or after judgment." *Id.* (emphasis added). This statute makes no mention of orders or sanctions entered by a specialty court judge in the course of administering and presiding over a probationary sentence of a participant in a specialty court program. Moreover, the language of SDCL 23A-32-9, when read in its totality, does not allow for review (and potential reversal) of interim or related rulings before or after judgment by a court other than the one whose judgment has been appealed. More specifically, it does not afford an avenue for this Court to review the merits of *the DUI court's* termination decision (a collateral ruling by another court) in the context of reviewing the *sentencing court's* revocation order. Such appellate jurisdiction must be provided by the Legislature. It is well settled that "[t]he right to appeal is

statutory and therefore does not exist in the absence of a statute permitting it."
*State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871 (citation omitted).

[¶29.]		Nevertheless, *Stenstrom* appears to have recognized the need for some level of review of the termination decision by concluding that sentencing courts may consider the actions of a specialty court "indirectly."[2] 2017 S.D. 61, ¶ 16, 902 N.W.2d at 791. But the Court did not elaborate on what was meant by an *indirect* consideration because it determined that "Stenstrom explicitly waived the right to contest revocation[.]" *Id.* ¶ 16, 902 N.W.2d at 792. Therefore, we must now explain to what extent a sentencing court may "indirectly" consider the DUI court's termination decision.

[¶30.]		On a motion to revoke a suspended sentence for a violation of a condition of suspension, it is well settled that a sentencing court has discretion to determine if it is reasonably satisfied that a violation has occurred and whether the defendant is appropriate for continued supervised release under regular probation. *State v. Beck*, 2000 S.D. 141, ¶ 7, 619 N.W.2d 247, 249, *abrogated on other grounds as recognized in State v. Taylor*, 2020 S.D. 48, ¶ 45, 948 N.W.2d 342, 355–56; *State v. Bell*, 369 N.W.2d 140, 142 (S.D. 1985); *State v. Elder*, 77 S.D. 540, 544, 95 N.W.2d

---

2.		There are sound reasons, for the efficacy of these programs, to preclude participants from being able to *overturn* the termination decision via a collateral challenge to the basis for the decision to terminate. But when a program participant alleges a *due process violation* associated with the termination decision, a lack of any level of review of such a violation would be problematic. The *Stenstrom* decision allowing for an *indirect* consideration of the drug court's actions in the context of a court's revocation and sentencing determination provides an avenue for a review of such violations. In any event, Kari does not allege she was deprived of due process here, so we need not address what type of relief might be afforded in a case where a due process violation has occurred.

592, 594 (1959). Nothing in our current statutory scheme pertaining to specialty court programs or the rules enacted to implement these programs mandates that a sentencing court revoke a defendant's suspended sentence every time a participant has been terminated from a specialty court program, even if successful completion of the program is a condition of the suspended sentence. Moreover, when a sentencing court revokes a suspended sentence, the court may decide to continue the defendant on probation under a newly imposed suspended sentence and conditions. Although the court maintains discretion over these separate determinations following a termination from a specialty court program, nothing in our current statutory scheme entitles a defendant appearing before a sentencing court to a de novo evidentiary hearing relitigating the propriety of the DUI court's termination decision.

[¶31.] Nevertheless, in light of the circuit court's sentencing discretion, we conclude that a court may consider the conduct underlying the termination decision in deciding whether to revoke a suspended sentence or in determining what type of sentence to impose after revocation. This is precisely what the sentencing court did here. We note, however, that while the court was understandably cautious in allowing Kari to present duplicative testimony from the same expert who testified before the DUI court so that Kari could preserve the issue for appeal, the court could have, for the sake of judicial economy, simply taken judicial notice of the underlying DUI court record in conjunction with the State's and defense counsel's arguments.

-14-

[¶32.]      Kari further argues that even if the propriety of the termination decision cannot be reviewed, the sentencing court nevertheless abused its discretion when it revoked her suspended sentence because, in her view, the court did not carefully take into account all of the evidence presented during the DUI termination hearing and both the revocation and sentencing hearings. She notes that the State's witnesses generally agreed that she was compliant on supervised release. She also concedes that she had some moments of non-compliance, including when she left the county without permission and continued contact with her boyfriend. However, she claims the State failed to present evidence to support that the SCRAM readings accurately reflected alcohol consumption events or that she "violated the terms of her probation in any other way." She further asserts that the sentencing court failed to give adequate weight to her argument that she had not been drinking and to the evidence attacking the validity of the SCRAM readings.

[¶33.]      In reviewing the sentencing court's decision to revoke a suspended sentence for an abuse of discretion, "the weight of the evidence and the credibility of the witnesses is largely a matter of the trial court's determination[.]" *State v. Lemler*, 2009 S.D. 86, ¶ 44, 774 N.W.2d 272, 287 (citation omitted) (alteration in original). We do not disturb the sentencing court's findings "unless we are left with a definite and firm conviction that an error was made." *Id.* ¶ 41. Therefore, "[a]s long as there is adequate evidence to support this minimal level of scrutiny, the trial court's decision will be upheld." *State v. Divan*, 2006 S.D. 105, ¶ 7, 724 N.W.2d 865, 869.

[¶34.] Contrary to Kari's claim, the sentencing court did not merely rely on the SCRAM readings when it revoked her suspended sentence after finding that her termination from the DUI court program constituted a violation of the conditions of her suspended sentence. Rather, the court considered the broader context surrounding the reasons for which Kari was terminated from the program, and it was apparent from the court's comments before pronouncing sentence that the court had read the transcript of the termination hearing. The court noted that Kari's expert had agreed that at least one of her SCRAM readings in April was consistent with an alcohol consumption event. The court also referred to another SCRAM reading in April which was reported as a possible "interference or blocking of the SCRAM bracelet" (a tampering event). Finally, the court considered testimony at the sentencing hearing from Kari's court services officers regarding her dishonesty and her failure to change her "people, places, and things," which placed her "sobriety at risk[.]" From our review of the record, we conclude the sentencing court did not abuse its discretion in revoking Kari's suspended sentence.

[¶35.] Affirmed.

[¶36.] JENSEN, Chief Justice, and KERN, Justice, and GILBERTSON, Retired Chief Justice, concur.

[¶37.] SALTER, Justice, deeming himself disqualified, did not participate.

[¶38.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.