IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2024

## STATE OF TENNESSEE v. BRITTANY LINDA LOU DAVIS

**Appeal from the Circuit Court for Lincoln County**
**No. 21-CR-65    Forest A. Durard, Jr., Judge**

_____

### No. M2023-00225-CCA-R3-CD

_____

The defendant, Brittany Linda Lou Davis, appeals her Lincoln County Circuit Court jury convictions of delivering and selling .5 grams or more of methamphetamine, arguing that the trial court erred by admitting a recording of the controlled buy, that the evidence was insufficient to support her convictions, and that the trial court erred by sentencing her as a Range III offender.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

Jonathan C. Brown, Fayetteville, Tennessee, for the appellant, Brittany Linda Lou Davis.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval and Matt Goney, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Lincoln County Grand Jury charged the defendant by presentment with one count each of selling .5 grams or more of methamphetamine in a drug-free zone and delivering .5 grams or more of methamphetamine in a drug-free zone.

At the September 2021 trial, Investigator Tammy McDonald of the Lincoln County Sheriff's Department ("LCSD") testified that on July 10, 2020, she and Sergeant Mike Pitts met with a confidential informant at a church on Highway 64 to arrange a controlled buy from the defendant.  She said that "Sergeant Pitts spoke with the informant, provided recording equipment, talked to them about the buy or what would occur."  Investigator McDonald searched the informant and the informant's vehicle "just looking

for illegal narcotics or anything that might be concerning in the vehicle, and nothing was located." The controlled buy was to occur "at a residence or a trailer, kind of behind the community center and church there in McBurg." Investigator McDonald was "to run surveillance for the buy," so when she left the church, she "stayed on Highway 64, very near the residence. Out of visual of the residence but definitely in the area if needed." After the controlled buy was complete, Investigator McDonald followed the informant's vehicle back to the church, where she searched the informant and the informant's vehicle again, finding nothing.

During cross-examination, Investigator McDonald acknowledged that she could not see the community center or the residence where the controlled buy took place from her position on Highway 64. She said that she did not use any vehicle or body camera that day and noted that she "was simply backup on this particular situation."

Sergeant Mike Pitts of the LCSD testified that he was the primary narcotics investigator in Lincoln County. He said that he routinely uses confidential informants in his work and acknowledged that some of them are drug users or have criminal records. He said that he always investigates and verifies information provided by informants and follows specific procedures for controlled buys, including using recording equipment.

Relative to this case, Sergeant Pitts arranged for a confidential informant to purchase methamphetamine from the defendant on July 10, 2020. He met with the informant in a church parking lot on Highway 64, had the informant and the informant's vehicle searched, issued the informant $250 cash, and equipped the informant with an "audio/video recording device." Sergeant Pitts listened in on a recorded conversation between the informant and the defendant and recognized the defendant's voice because he had "heard her voice previously." During that conversation, the informant arranged to buy 2.5 grams of methamphetamine from the defendant at her residence on 93 McBurg Road. Sergeant Pitts estimated that the residence was 15 miles away and described it as being next to and sharing a driveway with a different church.

Sergeant Pitts proceeded to the defendant's residence in an undercover "hooptie" vehicle, with the informant following in their own vehicle, and Investigator McDonald following the informant. Two other officers were also "in the area providing assistance." Sergeant Pitts parked his vehicle in the parking lot of the church next door to the defendant's residence and watched the informant park, "walk[] up to the front door of the residence, knock[] on the door," and be "led into the residence by [the defendant]." Outside the residence, he saw "a vehicle I know [the defendant] to be operating" parked in the driveway. He saw no indication that anyone else was at the residence. Sergeant Pitts listened to the informant's interaction with the defendant as it was happening, but he could

-2-

not see what occurred in the residence because the informant had placed the recording device in their pocket. He explained that informants sometimes need to hide the recording device to prevent it from being discovered.

After the controlled buy was complete, Sergeant Pitts, the informant, and Investigator McDonald returned to the church parking lot where they initially met. The informant handed Sergeant Pitts a bag of what appeared to the sergeant to be methamphetamine. Sergeant Pitts said that a search of the informant and the informant's vehicle revealed that the informant no longer had the $250 cash. Sergeant Pitts estimated that the McBurg Community Center, where children "play[] on the playground" and take classes, was "[a]round 550 feet" from the defendant's residence.

During cross-examination, Sergeant Pitts explained that, although the radios "were spotty," he provided the informant with a cell phone that recorded the entire encounter. He said that if he were to lose his live connection to the informant's recording, he could dial a telephone number that would automatically reconnect him to the audio and video feed. He acknowledged that because the audio and video feed ran on "a cellular data plan," he "did not have enough reception to watch the actual video in realtime, but I was able to listen to the audio" of the entire encounter. He said that he lost the audio feed while driving to the defendant's residence but was able to reconnect.

On redirect examination, Sergeant Pitts said that $250 for two-and-a-half grams of methamphetamine was the amount agreed upon by the informant and the defendant.

Benjamin McCurry, the director of the 9-1-1 Center for Lincoln County, testified that a map produced "from our system" showed an approximate distance of 575 feet between the defendant's residence and the McBurg Community Center.

LCSD Investigator Doug Bolenger testified that he provided security during the controlled buy and "[b]asically stayed in the car in the general area of where things were going down" "in case something were to happen." He said that he primarily "stayed running basically a perimeter route on Highway 64 West Pulaski Highway in and around the general area." Investigator Bolenger also served as the evidence custodian and testified that the methamphetamine recovered from the informant was securely collected and held according to department policy.

During cross-examination, Investigator Bolenger said that he was in a vehicle with Investigator Charles Berry during the controlled buy. He acknowledged that they could not hear the live audio recording from the informant but said that they were "just

-3-

there in case [another officer] got on the radio . . . [and] hollered to us that they needed assistance or anything like that."

Tennessee Bureau of Investigation Special Agent Lela Jackson testified as an expert in forensic chemistry. She tested the crystal substance recovered from the confidential informant in this case and determined it to be 2.32 grams of a substance containing methamphetamine.

Ronald Mitchell testified that he was the president of the board of the McBurg Community Center, a non-profit organization. He said that the community center was used "for different events, birthday parties, kids['] birthday parties, wedding receptions, showers, family reunions." The center also had a playground, a walking track, and "some workout equipment." He said that the center housed "a lot of community activity and things like that." During cross-examination, Mr. Mitchell testified that the McBurg Community Center was owned by a board and not by the city or county government.

The State rested. After a *Momon* colloquy, the defendant elected not to testify and did not put on additional proof.

On this evidence, the jury convicted the defendant of the lesser included offenses of selling .5 grams or more of methamphetamine and delivering .5 grams or more of methamphetamine, declining to find that the offenses occurred in a drug-free zone.

At the November 2022 sentencing hearing, Jonathan Williams from the Tennessee Department of Correction Board of Probation and Parole testified that he prepared the defendant's presentence report, which was exhibited to his testimony. The defendant's prior criminal history is provided below.

| Conviction | Conviction Class | Offense Date |
|---|---|---|
| Failure to appear | Class A misdemeanor | October 17, 2019 |
| Failure to appear | Class A misdemeanor | August 26, 2019 |
| Shoplifting | Class A misdemeanor | August 11, 2019 |
| Shoplifting | Class A misdemeanor | May 31, 2019 |
| Casual Exchange | Class A misdemeanor | May 31, 2019 |
| Possession of drug paraphernalia | Class A misdemeanor | May 31, 2019 |
| Distribution of 5 grams or more of cocaine base | Federal felony - trial court classified as B felony | October 18, 2007 |

| Conspiracy to commit aggravated burglary | Class D felony | February 26, 2006 |
|---|---|---|
| Conspiracy to commit aggravated robbery | Class C felony | February 26, 2006 |
| Aggravated burglary | Class C felony | February 26, 2006 |
| Aggravated robbery | Class B felony | February 26, 2006 |
| Criminal simulation | Class E felony | May 9, 2005 |
| Criminal simulation | Class E felony | May 4, 2005 |

Sergeant Mike Pitts testified that the "market" for methamphetamine is "overrun," with "more and more . . . being pumped in to the community and causing prices to get cheaper and more people are using and being addicted to meth[amphetamine]." He said that the rise in methamphetamine addiction contributes to a rise in "[t]heft and burglaries, things of that nature." He said, "It is becoming a 24 hour a day fight to combat the people distributing meth[amphetamine]." He also said that the police had "[r]eceived numerous complaints" about things occurring at the defendant's residence, and he had "observed cars going in and out all times of the day and night, traffic consistent with drug sales . . . . We conducted traffic stops out there [at] different times of the day and night where we have recovered narcotics, firearms off of people leaving the residence."

Larry Davis, the defendant's father, testified that he and the defendant were close and that the defendant had helped him during his on-going health issues. He said that the defendant had one child and one grandchild who she was "crazy about."

The trial court determined that the defendant's federal felony conviction for distribution of more than 5 grams of cocaine constituted a Class B felony for the purposes of sentencing. The court also found that the 24-hour merger rule did not apply to any of the defendant's four prior convictions from February 26, 2006. Based on the defendant's criminal history, the trial court classified her as a Range III, persistent offender. In determining the length of sentence, the court applied enhancement factors 1, 8, and 13 and applied no mitigating factors. The trial court merged the defendant's convictions and sentenced her as a Range III offender to 25 years' incarceration to be served consecutively to any prior unexpired sentences.[1]

---

[1] The trial court sentenced the defendant only for the conviction of selling .5 grams or more of methamphetamine. The judgment for the convction of delivering .5 grams or more of methamphetamine notes only that the conviction "merges with Count 1." We note that our supreme court has advised that "[w]hen the jury returns guilty verdicts on multiple offenses that eventually will be merged, the best practice is for the trial court to impose a sentence on each count and reflect the sentence on the respective uniform judgment document." *State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015).

Following a timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant argues that the recording of her encounter with the informant was not properly authenticated, that the admission of the recording without the informant's testimony violated her right to confrontation, that the evidence was insufficient to support the conviction, and that the trial court erred by sentencing her as a Range III offender.

## I. Admission of Recording

The defendant argues that the trial court erred by admitting into evidence a recording of her interaction with the confidential informant because the State failed to properly authenticate the recording and because its admission violated her right to confront witnesses against her.

### A. Authentication

The defendant contends that the State failed to properly authenticate the recording of the informant's interaction with the defendant because Sergeant Pitts did not see the interaction as it was being recorded. The State argues that the trial court did not abuse its discretion in admitting the recording.

Tennessee Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). One method of authentication is testimony by a witness with knowledge "that a matter is what it is claimed to be." Tenn. R. Evid. 901(b)(1). Both Rule 901 and the common law designate the trial court as the "arbiter of authentication issues," and, accordingly, that court's ruling will not be disturbed absent a showing that the court clearly abused its discretion. *See* Tenn. R. Evid. 901, Advisory Comm'n Comments; *State v. Mickens*, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006), *overruled on other grounds by State v. Patterson*, 564 S.W.3d 423, 433 (Tenn. 2018); *see State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

In our view, the trial court did not abuse its discretion in finding that the video was properly authenticated. Sergeant Pitts testified that he provided the informant with the recording device, watched the informant enter the defendant's residence, heard the interaction that occurred inside the residence via the recording device, watched the

-6-

informant leave the defendant's residence, followed the informant back to the predetermined meeting place, and collected the recording device from the informant. Sergeant Pitts also testified that he recognized the defendant's voice on the recording. This testimony is sufficient to support the trial court's finding that the recording was what it was purported to be—the recording of the controlled buy collected from the informant by Sergeant Pitts. This is all that Rule 901 requires. The trial court did not err.

## B. Confrontation Clause

Relatedly, the defendant argues that because the informant did not testify at trial, the trial court's admission of the recording violated the Confrontation Clause. The State contends that the defendant waived this issue and is not entitled to plain error relief.

The State is correct that the defendant failed to raise the issue of confrontation in her motion for new trial, and accordingly, she has waived our plenary review of the issue. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.").

Whether properly assigned or not, however, this court may, "[w]hen necessary to do substantial justice, . . . consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial." Tenn. R. App. P. 36(b). This court will grant relief for plain error only when:

> (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it "probably changed the outcome of the trial."

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (quoting *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). The party claiming plain error bears the burden of satisfying all five criteria as a prerequisite to plain error review. *See id.* Because each factor must be established, we need not consider all five factors when a single factor indicates that relief is not warranted. *State v. Fayne*, 451 S.W.3d 362, 372 (Tenn. 2014) (citing *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007)). "[A]n error would have to [be] especially

egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Fayne*, 451 S.W.3d at 372 (citation omitted) (alterations in *Fayne*).

We cannot say that the trial court breached a clear and unequivocal rule of law by admitting the recording without the defendant's having an opportunity to cross-examine the informant. The Sixth Amendment to the federal constitution and article I, section 9 of the Tennessee Constitution afford the criminal accused the right to confront the witnesses against her. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Although the provisions are not coterminous, our supreme court has "expressly adopted and applied the same analysis used to evaluate claims based on the Confrontation Clause of the Sixth Amendment." *State v. Dotson*, 450 S.W.3d 1, 62 (Tenn. 2014) (citing *State v. Parker*, 350 S.W.3d 883, 898 (Tenn. 2011); *State v. Franklin*, 308 S.W.3d 799, 809-10 (Tenn. 2010); *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008); *State v. Lewis*, 235 S.W.3d 136, 145 (Tenn. 2007)).

In *Crawford v. Washington*, the United States Supreme Court departed from decades-long precedent and held for the first time that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Id.* Importantly, the Confrontation Clause does not bar statements that are not hearsay. *State v. George Anthony Bell*, No. M2008-01187-CCA-R3-CD, 2009 WL 3925370, at *4 (Tenn. Crim. App., Nashville, Nov. 19, 2009) (citations omitted); *State v. Bobby Lewis Smith*, No. M2010-02077-CCA-R3-CD, 2012 WL 3776679 at *2 (Tenn. Crim. App., Nashville, Aug. 31, 2012) (citations omitted). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). An out-of-court statement that is not offered to prove the truth of the matter asserted is not hearsay and is not subject to the Confrontation Clause. *Crawford*, 541 U.S. at 59 n. 9.

Accordingly, the admissibility of statements by non-testifying informants under the Confrontation Clause depends on context. *George Anthony Bell*, 2009 WL 3925370, at *5. This court has previously explained,

> Given that an informant's general intent is to aid law enforcement, the statements an informant makes in the course of his or her interaction with law enforcement could be said to be made with the intent of aiding later criminal prosecution,

which is a characteristic of the testimonial statements the Confrontation Clause bars. However, because an informant can aid police either by directly providing police with information or by allowing police to monitor his or her illicit interaction with a target, an informant's statement may not actually take the form of hearsay and, therefore, its admission may not violate the Confrontation Clause, though it may be made with the purpose of aiding future prosecution.

*Id.* Consequently, courts have generally held that out-of-court statements made by a non-testifying informant directly to the police violate the Confrontation Clause, but "informant statements made during a recorded conversation between the informant and a non-law enforcement party do not violate the Confrontation Clause." *Id.* at *5-6 (citing *State v. Johnson*, 771 N.W.2d 360, 369-70 (S.D. 2009)).

Here, as the trial court determined, the informant's statements on the recording were not introduced to prove the truth of the assertions made. Consequently, the informant's statements do not constitute hearsay and the Confrontation Clause is not implicated.

### III. Sufficiency

Next, the defendant argues that the evidence adduced at trial was insufficient to sustain her convictions. The State argues that the evidence is sufficient.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As relevant to this case, "[i]t is an offense for a defendant to knowingly . . . [d]eliver a controlled substance . . . [or s]ell a controlled substance." T.C.A. § 39-17-

417(a)(2)-(3). Methamphetamine is a Schedule II controlled substance. *Id.* § 39-17-408(d)(2). A violation of Code section 39-17-417(a)(2) or (3) is a Class B felony when the controlled substance involved is .5 grams or more "of any substance containing . . . methamphetamine." *Id.* § 39-17-417(c).

The evidence, taken in the light most favorable to the State, established that a confidential informant arranged to meet the defendant at her residence to purchase 2.5 grams of methamphetamine for $250. The informant was searched, and after officers determined that the informant did not possess any drugs, was provided $250 cash. The informant drove to the defendant's residence, purchased 2.32 grams of methamphetamine from the defendant, and returned to a predetermined meeting place, where officers ensured that the informant possessed no cash or drugs other than the methamphetamine. Sergeant Pitts led and Investigator McDonald followed the informant's vehicle, and Sergeant Pitts watched the defendant welcome the informant into her residence and listened to the informant and the defendant's transaction as it was happening. Sergeant Pitts recognized the defendant's voice on the audio feed from his prior encounters with her. In our view, this evidence sufficiently supports the defendant's convictions of selling and delivering .5 grams or more of methamphetamine.

## IV. Sentencing

Finally, the defendant argues that the trial court erred by classifying her as a Range III offender, arguing that some of her prior convictions should have been considered a single conviction for the purposes of offender classification. The State argues that the trial court did not err.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to a trial court's determination of the defendant's range classification. *See State v. Laylon Ward, Jr.*, No. W2017-00736-CCA-R3-CD, 2018 WL 1091792, at *2 (Tenn. Crim. App., Jackson, Feb. 23, 2018) (citing *State*

*v. Joseph Cordell Brewer, III*, No. W2014-01347-CCA-R3-CD, 2015 WL 4060103, \*7-8 (Tenn. Crim. App., Jackson, June 1, 2015)) (applying an abuse of discretion standard to the trial court's determination of the range classification).

As relevant here, a Range III, persistent offender "is a defendant who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, . . . or . . . [a]t least two (2) Class A or any combination of three (3) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony." T.C.A. § 40-35-107(a)(1)-(2). Additionally,

> In determining the number of prior felony convictions a defendant has received[,] . . . [e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims, or convictions for the offense of aggravated burglary under § 39-14-403, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]

*Id.* § 40-35-107(b)(4). This is commonly known as the 24-hour merger rule.

The prior convictions at issue here are the defendant's convictions of conspiracy to commit aggravated burglary, conspiracy to commit aggravated robbery, aggravated burglary, and aggravated robbery for offenses committed on February 26, 2006. Under the plain language of the statute, the defendant's aggravated burglary conviction is excluded from merging with the other convictions despite having been committed within the same 24-hour period. *Id.* As to the defendant's aggravated robbery conviction, this court has previously determined that for the purpose of the 24-hour merger rule, "the statutory elements of robbery include a threat of bodily injury." *State v. Jamie Lynn Middlebrook*, No. M2009-02276-CCA-R3-CD, 2011 WL 198689, at \*7 (Tenn. Crim. App., Nashville, Jan. 11, 2011) (citing *State v. Iwanda Anita Buchanan,* No. M2007-02870-CCA-R3-CD, 2008 WL 4467185, at \*5 (Tenn. Crim. App., Nashville, Oct. 6, 2008)); *see also* T.C.A. § 39-13-402(a) ("Aggravated robbery is robbery as defined in [section] 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or . . . [w]here the victim suffers serious bodily injury."); *id.* § 39-13-401(a) ("Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear.") Consequently, the defendant's conviction for aggravated robbery is

also excluded from the 24-hour merger rule.

The only remaining question is whether conspiracy to commit an offense is excluded from the 24-hour merger rule if the offense that is the object of the conspiracy is excluded. The State points to *State v. Lewis*, No. M2005-02279-CCA-R3-CD, 2006 WL 2738160, at *8 (Tenn. Crim. App., Nashville, Sept. 26, 2006), to argue that "[t]he 24-hour merger rule overlooks distinctions between an inchoate offense and the completed offense"; however, at the time the *Lewis* case was decided the 24-hour merger rule looked to whether the prior convictions *resulted* in bodily injury to the victim and not to whether the "*statutory elements* include serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims." *Id.* § 40-35-107(b)(4) (emphasis added). The defendant points to *State v. Miler*—a case we cannot find based on the name and citation provided by the defendant—a case that also turned on whether the prior convictions *resulted* in bodily injury or threatened bodily injury to the victim. These cases are not applicable to our analysis of whether a conspiracy conviction contains a *statutory element* of "serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims" as stated by the current 24-hour merger rule as provided in Code section 40-35-107(b)(4).

This court has previously concluded that a conviction of attempted aggravated robbery is excluded from the 24-hour merger rule because it "necessarily contains an element of bodily injury or threatened bodily injury" in that a conviction requires the State to prove that the defendant "had the culpability required to commit either bodily harm or threatened bodily harm" as provided in the aggravated robbery statute. *State v. Todd Samuel Adcock*, No M2018-01623-CCA-R3-CD, 2019 WL 5455364, at *4 (Tenn. Crim. App., Nashville, Oct. 24, 2019). Similarly, this court has concluded that a conviction for facilitation of aggravated robbery is excluded from the 24-hour merger rule because it requires the State to "'prove the commission of a specified felony' in order to establish the facilitation of a felony." *State v. Willie Lee Hughes, Jr.*, No. M2015-01207-CCA-R3-CD, 2016 WL 6956804, at *4 (Tenn. Crim. App., Nashville, Nov. 29, 2016) (citation omitted).

Relevant to criminal conspiracy, our code provides that

[t]he offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

-12-

T.C.A. § 39-12-103(a). In our view, conspiracy to commit aggravated robbery includes a statutory element of threat of bodily injury. The State was required to prove that the defendant "act[ed] for the purpose of promoting or facilitating" theft of property from the person of another "with a deadly weapon or . . . [w]here the victim suffers serious bodily injury." *See id.* §§ 39-12-103(a), 39-13-402(a), -401(a). This required proof of, at minimum, a threat of bodily injury to the victim. Consequently, conspiracy to commit aggravated robbery is excluded from the 24-hour merger rule.

We need not decide whether conspiracy to commit aggravated burglary is excluded from the rule because there are no other convictions within that 24-hour period with which it could merge. The trial court did not err by counting each conviction separately and sentencing the defendant as a Range III offender.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-13-